1  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
DANIEL C. DECARLO, SB# 160307
2     E-Mail: Dan.DeCarlo@lewisbrisbois.com
THOMAS S. KIDDE, SB# 61717
3     E-Mail: Thomas.Kidde@lewisbrisbois.com
GRIFFEN J. THORNE, SB# 306152
4     E-Mail: Griffen.Thorne@lewisbrisbois.com
633 West 5th Street, Suite 4000
5  Los Angeles, California 90071
Telephone: 213.250.1800
6  Facsimile: 213.250.7900

7  Attorneys for Plaintiffs Harbor Breeze
Corporation and L.A. Waterfront Cruises,
8  LLC

9

10                    UNITED STATES DISTRICT COURT

11           CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

12

| | |
|---|---|
| Harbor Breeze Corporation, a California corporation, and L.A. Waterfront Cruises, LLC, a California limited liability company,<br><br>                Plaintiffs,<br><br>        vs.<br><br>Newport Landing Sportfishing, Inc., a California corporation; Davey's Locker Sportfishing, Inc., a California corporation; Ocean Explorer, Inc., a California corporation; Freelance Sportfishing, Inc., a California corporation; and DOES 1–10,<br><br>                Defendants. | CASE NO. 8:17-cv-01613-CJC-DFM<br><br>**PLAINTIFFS HARBOR BREEZE CORPORATION AND L.A. WATERFRONT CRUISES, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>Action Filed:   September 15, 2017<br>Trial Date:      None Set<br><br>Date:            October 23, 2017<br>Time:            1:30 p.m.<br>Crtrm.:          9B—9th Floor |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4840-1938-4647.4

# **TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................... 1

II.    STATEMENT OF FACTS .......................................................................... 2

       A.    Plaintiffs And Their Advertising ......................................................... 2

       B.    Defendants And Their False And Misleading Advertising ................... 3

       C.    First False Advertisement: Bait-And-Switch Prices With Hidden,
             Add-On Fees ................................................................................ 4

       D.    Second False Advertisement: "Fuel Surcharge" Fee ............................ 7

       E.    Third False Advertisement: "Wharfage" Fee ......................................... 9

III.   A PRELIMINARY INJUNCTION IS PROPER HERE................................. 10

       A.    Plaintiffs Are Likely To Succeed On Their False Advertising
             Claims Under Lanham Act § 43(a) ..................................................... 11

             1.    Plaintiffs Are Likely To Succeed In Establishing That
                   Defendants Falsely Advertise The Prices Of Their Cruises....... 13

             2.    Plaintiffs Are Likely To Succeed In Establishing That
                   Defendants Falsely Advertise The Nature Of The "Fuel
                   Surcharge" Fee .................................................................... 14

             3.    Plaintiffs Are Likely To Succeed In Establishing That
                   Defendants Falsely Advertise The Nature Of The
                   "Wharfage" Fee ................................................................... 15

       B.    Plaintiffs Are Likely To Succeed On Their California Business
             And Professions Code § 17500 False And Misleading
             Advertising Claim ........................................................................... 16

       C.    Plaintiffs Are Likely To Succeed On Their California Business
             And Professions Code § 17200 Unfair Competition Claim ................. 17

       D.    Plaintiffs Will Suffer Irreparable Harm Absent An Injunction ........... 18

       E.    The Equities Tip Sharply In Plaintiffs' Favor ..................................... 20

       F.    An Injunction Prohibiting False And Misleading Forms Of
             Advertisement Is In The Public Interest .............................................. 21

IV.    CONCLUSION ....................................................................................... 21

4840-1938-4647.4

i

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1

## **TABLE OF AUTHORITIES**

2

## **CASES**

3
4
*Alliance for the Wild Rockies v. Cottrell,*
632 F.3d 1127 (9th Cir. 2011)..................................................................11

5
*Am. Optometric Soc'y, Inc. v. Am. Bd. of Optometry, Inc.,*
No. CV 10-03983 AHM(FFMx), 2012 U.S. Dist. LEXIS 81379 (C.D.
Cal. June 12, 2012)...................................................................................12

6
7
*Badr Dhaifallah Ahmed Mohammed v. United States,*
No. CV 17-00786 AB(PLAx), 2017 U.S. Dist. LEXIS 16405 (C.D.
Cal. Jan. 31, 2017)...................................................................................11

8
9
*Compaq Computer Corp. v. Packard Bell Elecs.,*
163 F.R.D. 329 (N.D. Cal. 1995) ............................................................12

10
*Consumer Fin. Prot. Bureau v. Siringoringo,*
No. SACV 14-01155 JVS(AJWx), 2016 U.S. Dist. LEXIS 4272 (C.D.
Cal. Jan. 7, 2016)....................................................................................21
11

12
*Davis v. HSBC Bank,*
691 F.3d 1152 (9th Cir. 2012)..................................................................17

13
*Deere Constr. LLC v. Cemex Constr. Mtls. Fla., LLC,*
No. 15-24375-CIV-ALTONAGA/O'Sullivan, 2016 U.S. Dist. LEXIS
111145 (S.D. Fla. Jul. 26, 2016) ..............................................................15
14

15
16
*Dover v. British Airways, PLC*
(UK), No. 12 CV 5567 ............................................................................6

17
*Dwyer v. J.I. Kislyak Mortg.,*
103 Wn. App. 542 (Wash. App. 2000)......................................................16

18
19
*Ebay, Inc. v. Bidder's Edge, Inc.,*
100 F. Supp. 2d 1058 (N.D. Cal. 2000) ...................................................18

20
*Homeland Housewares, LLC v. Euro-Pro Op. LLC,* No. CV 14-03954
DDP(MANx), 2014 U.S. Dist. LEXIS 117587 (C.D. Cal. Aug. 22,
2014)........................................................................................................20
21

22
*Homeland Housewares, LLC v. Euro-Pro Operating LLC,*
No. CV 14-03954 DDP(MANx), 2014 U.S. Dist. LEXIS 117587
(C.D. Cal. Aug. 22, 2014) .......................................................................21
23

24
*Inbesa Am. v. M/V Anglia,*
134 F.3d 1035 (11th Cir. 1998)................................................................9

25
26
*Indoor Billboard/Wash., Inc. v. Integra Telecom. of Wash., Inc.,*
162 Wn. 2d 59 (Wash. 2007) ...................................................................16

27
*Johnson v. Macy,*
145 F. Supp. 3d 907 (C.D. Cal. 2015)......................................................11

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

ii

*Martinez v. Cenlar FSB*,
  No. SA CV 12-1880-DOC(RNBx), 2012 U.S. Dist. LEXIS 195721
  (C.D. Cal. Nov. 19, 2012) ........................................................................ 11

*Neighborhood Assistance Corp. of Am. v. First One Lending Corp.*,
  No. SACV 12-463 DOC(MLGx), 2012 U.S. Dist. LEXIS 67950 (C.D.
  Cal. May 15, 2012) ................................................................................... 19

*Orchard Supply Hardware LLC v. Home Depot USA, Inc.*,
  967 F. Supp. 2d 1347 (N.D. Cal. 2013) ...................................................... 12

*People ex rel. Bill Lockyer v. Fremont Life Ins. Co.*,
  104 Cal. App. 4th 508 (Cal. App. 2002) ...................................................... 17

*Polara Eng'g, Inc. v. Campbell Co.*,
  No. SA CV 13-00007-DFM, 2017 U.S. Dist. LEXIS 27304 (C.D. Cal.
  Feb. 27, 2017) .......................................................................................... 19

*POM Wonderful LLC v. Purely Juice, Inc.*,
  No. CV-07-02633 CAS(JWJx), 2008 U.S. Dist. LEXIS 55426 (C.D.
  Cal. July 17, 2008) ............................................................................... 20, 21

*Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*,
  944 F.2d 597 (9th Cir. 1991) ....................................................................... 18

*Shell Offshore, Inc. v. Greenpeace, Inc.*,
  864 F. Supp. 2d 839 (D. Alaska 2012) .......................................................... 21

*Sierra On-Line, Inc. v. Phoenix Software, Inc.*,
  739 F.2d 1415 (9th Cir. 1984) ..................................................................... 11

*Skydive Ariz., Inc. v. Quattrocchi*,
  673 F.3d 1105 (9th Cir. 2012) ..................................................................... 12

*Southland Sod Farms v. Stover Seed Co.*,
  108 F.3d 1134 (9th Cir. 1997) ..........................................................11, 12, 13

*Sun Microsys., Inc. v. Microsoft Corp.*,
  87 F. Supp. 2d 992 (N.D. Cal. 2000) ........................................................... 20

*Thompson Tank & Manufacturing Co., Inc. v. Thompson*,
  693 F.2d 991 (9th Cir. 1982) ....................................................................... 12

*Trekeight, LLC v. Symantec Corp.*,
  No. 04-CV-1479 H(BLM), 2006 U.S. Dist. LEXIS 100609 (S.D. Cal.
  May 23, 2006) .......................................................................................... 12

*Veera v. Banana Republic, LLC*,
  6 Cal. App. 5th 907 (Cal. App. 2016) .......................................................... 13

*Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.*,
  178 F. Supp. 2d 1099 (C.D. Cal. 2001) ........................................................ 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1

## **STATUTORY AUTHORITIES**

2

15 U.S.C. § 1127......................................................................................12

3

Cal. Bus. & Prof. Code § 17200 ...........................................................17

4

Cal. Bus. & Prof. Code § 17500 ...........................................................17

5

Cal. Civ. Code §§ 1770(a)(2) ................................................................18

6

Cal. Civ. Code § 1770(a)(4) ..................................................................18

7

Cal. Civ. Code § 1770(a)(9) ..................................................................18

8

Cal. Civ. Code § 1770(a)(13) ................................................................18

9

## **RULES AND REGULATIONS**

10

16 C.F.R. §§ 238.0, 238.2......................................................................18

11

12

## **ADDITIONAL AUTHORITIES**

13

*Air Tour Price Advertisements at* , available at
    https://cms.dot.gov/sites/dot.gov/fi (Feb. 21, 2012) .......................14

14

Ballentine's Law Dictionary, Dockage (2010)..........................................9

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

iv

Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Preliminary Injunction

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs Harbor Breeze Corporation ("Harbor Breeze") and L.A. Waterfront Cruises, LLC ("L.A. Waterfront Cruises") request that the Court enjoin Defendants' serial and flagrant false advertising which has maliciously targeted Plaintiffs in an apparent effort to run them out of business.  The parties are vigorous competitors in the whale watching and sportfishing industries in Southern California.  Plaintiffs offer cruises exclusively in Long Beach and San Pedro harbors in Los Angeles. Defendants[1] offer cruises exclusively from Newport Beach harbor in Orange County.

Defendants have exploited a vast web of deceptive online advertisements, from Google to Groupon, in a massive effort to defraud consumers concerning Defendants' artificially low prices, which are later subject to hidden, add-on fees that are themselves false and in many cases not disclosed to consumers until after a ticket is purchased.[2]  Defendants further operate as a number of commonly owned and operated entities in a carefully orchestrated conspiracy designed to create the illusion to consumers that there is legitimate competition at a price point far below any competitor in Southern California (there is not) or that all of Defendants' consumers offer similar pricing and hidden add-on fees (at least for Plaintiffs, such is not true).

Defendants' unlawful conduct has substantially harmed Plaintiffs, who have been forced to significantly lower their own ticket prices while considerably increasing their advertising spending and infrastructure investments.    Absent immediate judicial intervention, Plaintiffs will suffer immediate and irreparable

---

[1]  Newport Landing Sportfishing, Inc. ("Newport Landing"); Davey's Locker Sportfishing, Inc. ("Davey's Locker"); Ocean Explorer, Inc. ("Ocean Explorer"); and Freelance Sportfishing, Inc. ("Freelance").
[2]  Defendants' deceptive advertising goes beyond falsely advertising their prices but we have limited the preliminary injunction request to remedying those wrongs.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   harm and continue to lose market share despite spending more each year on

2   advertising and infrastructure.  Consumers will also continue to be fleeced if the

3   Court does not intervene and enjoin these unlawful practices.  The Court should

4   enjoin Defendants' false advertising and unlawful conduct as set forth below.

5   **II.   STATEMENT OF FACTS**

6         **A.   Plaintiffs And Their Advertising**

7         In the 1990s, Captain Dan Salas ("Salas") formed a whale watching and

8   sportfishing company, which became Harbor Breeze in 2001.  Declaration of Dan

9   Salas ("Salas Decl.") ¶¶ 2–3.  Harbor Breeze provides daily, year-round whale

10  watching, sportfishing, and charter cruises departing from Long Beach Harbor in

11  Los Angeles County, California.  Salas Decl. ¶ 3.  In 2014, Salas founded L.A.

12  Waterfront Cruises, which provides sportfishing and whale watching cruises from

13  San Pedro Harbor in Los Angeles County, California.  Salas Decl. ¶ 4.

14        In spite of Plaintiffs' efforts to reach customers, Plaintiffs have consistently

15  been forced to drastically lower the price of their tickets just to maintain positive

16  ticket sales.  Salas Decl. ¶¶ 12–13.  This has occurred despite the fact that (1) since

17  2008, all of the whale watching competitors in Harbor Breeze's immediate vicinity

18  have gone out of business or ceased doing business (Plaintiffs believe this is a result

19  of the Defendants' false advertising); (2) Plaintiffs have substantially increased their

20  fleet of ships by *more than 60% in the last two years alone*; and (3) Plaintiffs have

21  dramatically increased their advertising spending to, on average, more than

22  $500,000 with more than $10,000 per month spent on Google advertisements and

23  have cut $20 from the price of their whale watching tickets since the beginning of

24  2017.  Declaration of Richard Holstrom ("Holstrom Decl.") ¶¶ 4–5; Holstrom Decl.

25  Ex. B; Salas Decl. ¶¶ 12–18.[3]  Absent Defendants' misconduct, Plaintiffs would

26  _____

27  [3] Richard Holstrom is Plaintiffs' financial expert who has decades of experience in
    forensic accounting.  *See* Holstrom Decl. ¶ 2; Holstrom Decl. Ex. A.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   have seen a dramatic increase in ticket sales and would not have needed to spend

2   such a massive amount on advertising.

3        **B.**    **Defendants And Their False And Misleading Advertising**

4        Defendants are a series of commonly owned and operated companies

5   operating out of Orange County, California.  Request for Judicial Notice ("RJN")

6   Exs. A–D.  Defendants sell tickets on their various websites, including their primary

7   websites, www.newportwhales.com, www.newportlanding.com, and www.daveyslo

8   cker.com.  *E.g.*, Declaration of Griffen J. Thorne ("Thorne Decl.") Exs. A–D.

9   Defendants also appear to own or control a plethora of other websites,[4] including but

10  not limited to the following: www.longbeachwhalewatching.com, www.whalewatch

11  ingsantamonica.com, www.whalewatchingredondo.com, www.whalewatchdanapoin

12  t.com,  www.whalewatchingmarinadelrey.com,  www.whalewatchingsanpedro.com,

13  www.whalewatchinglagunabeach.com,   www.whalewatchinghuntingtonbeach.com,

14  and www.whalewatchingsantabarbara.com.

15       Defendants have also had a long-term relationship with Groupon, selling

16  tickets for as low as **$8**—which is well below operating costs.  Salas Decl. ¶ 18;

17  Thorne Decl. Ex. H.  Plaintiffs believe that the reason Defendants have been able to

18  keep their Groupon ticket costs so artificially low is that they fail to disclose that

19  customers will be forced to pay additional, hidden fees **after** the customer purchases

20  a Groupon ticket.  Thorne Decl. Ex. E; Thorne Decl. Ex. I; Declaration of Zachary

21  Grant ("Grant Decl.") ¶ 4; Grant Decl. Ex. C.  In fact, until recently, Defendants'

22  Groupon ticket prices were so low that Groupon discouraged Plaintiffs from selling

23  their tickets using the Groupon platform.  Salas Decl. ¶ 18.  As of about April 2017,

24  Plaintiffs have been able to sell tickets on Groupon, but were forced to cut a

25

26  [4] It appears that each of these websites use the same ticketing portal and thus would appear to be owned or at least controlled by Defendants.  *E.g.*, Thorne Decl. Ex. C

27  (showing various other websites of Defendants which each use the same ticketing portal).  Moreover, when purchasing tickets from one Defendant, tickets are

28  sometimes sold via other Defendants.  Grant Decl. ¶ 6; Grant Decl. Ex. E.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4840-1938-4647.4
3
Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Preliminary Injunction

1  substantial amount from their ticket prices to be able to do so.  Salas Decl. ¶ 19.

2  Recently, L.A. Waterfront Cruises was forced to offer tickets through Groupon for

3  **$7.50** to compete with Defendants—which nets L.A. Waterfront cruises only a few

4  dollars per ticket after Groupon takes its share of the sale.  Salas Decl. ¶ 19.

5    **C.    First False Advertisement: Bait-And-Switch Prices With Hidden,**

6    **Add-On Fees**

7    Defendants' primary deception is a classic bait-and-switch scam concerning

8  their ticket price.  The most prominent locale for Defendants' false advertising is

9  Google.  *See* Thorne Decl. Ex. A.  Any customer who uses Google to search for

10  "{Southern California City} Whale Watching" or "{Southern California City}

11  Sportfishing" or some iteration thereof will be inundated with Defendants'

12  advertisements.[5]  Thorne Decl. Ex. A.  For example, when a user searches for "long

13  beach whale watching," he or she is presented with three advertisements (one for a

14  $10 cruise, one for $13, and one for $16), though in fact Defendants do not offer

15  cruises departing from Long Beach and do not actually offer tickets for those prices.

16  Thorne Decl. Ex. A at 1.

17    Defendants offer these "special" prices on advertisements placed through

18  Google, Groupon, or in print, which prices are artificially low (in some cases as low

19  as $8) **but are never in fact available to consumers**.  Salas Decl. ¶¶ 6, 18; Thorne

20  Decl. Ex. A at 1, E; Grant Decl. Ex. C.   The advertisements give the false

21  impression that there is competition in Long Beach for a range of $10–16 between

22  Newport Landing and Davey's Locker—when in reality the two are commonly

23  owned.  RJN Exs. A–D, Salas Decl. ¶¶ 5, 7.  It is clear that the $10 advertisement is

24  designed to lure customers in more so than the other two advertisements, using the

25  lowest ticket price.

26

27  [5] As noted above, we are only seeking immediate relief for the false advertising for
28  Defendants' unlawful practices related to its pricing, the myriad other wrongs,
     including duping customers as to their location, will be addressed later.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4840-1938-4647.4
4
Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Preliminary Injunction

1  What really happens when a consumer clicks on Defendants' advertisements

2  is that the consumer is forced to click through several pages and is ultimately forced

3  to pay previously undisclosed fees which add dramatically to the overall price of the

4  ticket.  Thorne Decl. Exs. B, D; Grant Decl. ¶¶ 4–5, 7; Grant Decl. Exs. C, D, F.

5  **And in the case of Groupon sales, some of these fees are not disclosed until after**

6  **a ticket is purchased, even though in some cases the fine print of the ticket says**

7  **that no additional fees will be charged**.  Thorne Decl. Ex. I; Grant Decl. Ex. C;

8  Grant Decl. ¶ 4.

9  For example, if a customer searches "long beach whale watching," he or she

10  is presented with a paid advertisement for a $13 special.  Thorne Decl. Ex. B at 1.

11  But in fact, the consumer will not be charged $13.  Said another way, Defendants

12  advertise a price that is in fact not available to the customer.  Defendants do this

13  over and over to thousands of unsuspecting and ultimately duped customers.

14  After clicking the link and clicking through the following pages, a user is

15  finally informed in nondescript text that on Saturday and Sunday, the price is $17 ( a

16  fact not disclosed in the online advertisement).  Thorne Decl. Ex. B at 1–3.  After

17  selecting a date, clicking the "book" link, and clicking through yet another page, the

18  user is finally presented, *for the first time*, with an itemization of all fees for a ticket

19  price of $15.81: the $13 ticket price, plus a $2.50 "fuel surcharge" and a $0.31

20  "wharfage" fee.  Thorne Ex. B at 3–5.  This amounts to a nearly 20% increase from

21  the advertised price.  The advertised price is NOT available to the customer.

22  Furthermore, if a user purchases a ticket through Groupon, some

23  advertisements only disclose that fuel fees "may" apply (but they always apply).

24  Grant Decl. Ex. C at 1.  Other advertisements falsely claim that "Ticket value

25  includes all fees."  Thorne Decl. Ex. I.[6]  If a user purchases a ticket through

26  ────────────────────

27  [6] This example (Thorne Decl. Ex. I) in particular is a veritable laundry list of false

28  statements.  To wit: "A fuel surcharge will be charged to all passengers if marine
(footnote continued)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4840-1938-4647.4

5

Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Preliminary Injunction

1    Groupon and then attempts to book a cruise on Defendants' website, the user is only

2    then told that he or she **must** pay the "fuel surcharge" irrespective of the cost of

3    fuel, and **must** pay the previously undisclosed "wharfage" fees—otherwise, the user

4    cannot book a cruise.   Grant Decl. ¶ 4; Grant Decl. Ex. C at 4–12.   So the

5    unsuspecting customer is victimized by paying for a Groupon ticket with the

6    understanding of one price only to be force to pay more when trying to use the

7    ticket.   Meanwhile, Defendants get the benefit of advertising the artificially low

8    price (i.e., customers choose the Defendants because of the low price) to the

9    detriment of Plaintiffs and the customer.

10         Even upon being presented at checkout with the previously undisclosed fees,

11    consumers would not be inclined to back out of the purchase because (1) the

12    additional fees are described in such a way as they appear to be legitimate,

13    mandatory-type fees that the customer must pay, and (2) competitors will charge the

14    same or similar fees.   Declaration of Bruce Silverman ("Silverman Decl.") ¶¶ 20,

15    29–31.[7]   Defendants count on consumers not backing out of the purchase as the

16    _____

17    fuel is over $3.50 per gallon on the date of departure. [This is false]  The surcharge
will vary depending on current fuel prices. [This is false] Infants aged 2 and younger

18    may attend free of charge, but you must reserve their spot when booking your cruise
and purchase a Complimentary Infant Ticket . . . ."   This last representation is

19    nonsensical.   This oxymoronic statement, i.e., the "purchase of a Complimentary
Infant Ticket" would be amusing if it were not fraudulent.

20    [7]   Bruce Silverman is an advertising expert who has particular expertise in this area
having been heavily involved in airline advertising at the onset of the airlines' use of

21    such fees.  *See* Silverman Decl. ¶¶ 2–15, 22–25, Silverman Decl. Exs. A, B.  He is
uniquely qualified to offer his opinion on this topic as a result.  Many authorities

22    however, illustrate the falsity of Defendants' practices.  One definition of a "fuel
surcharge" is a "Levy in addition to a fare, imposed on per ticket basis to recover

23    increase in cost of fuel since the ticket was issued."  *See Fuel Surcharge*, Bus.
Dictionary, http://www.businessdictionary.com/definition/fuel-surcharge.html (last

24    visited September 12, 2017); *see Dover v. British Airways, PLC (UK)*, No. 12 CV
5567 (RJD) (MDG), 2013 U.S. Dist. LEXIS 160127, at *15 (E.D.N.Y. Nov. 7,

25    2013) ("The plain meaning of the term 'fuel surcharge' is a supplemental charge
that is reasonably related to or based upon the cost or price of fuel.  This

26    understanding comports with conventional usage."); *see* Salas Decl. ¶ 9.  Fuel
surcharges in particular became part of the national consciousness in the 1970s, in

27    large part because of airlines.  Silverman Decl. ¶¶ 22–25.  Airlines have periodically
since then used fuel surcharges as a means of accounting for unforeseen spikes in

28    (footnote continued)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4840-1938-4647.4

6

Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Preliminary Injunction

1    previously undisclosed fees only amount to a few extra dollars and *seem* innocuous
2    and legitimate, but in fact add, in some instances, about 20% to the cost of the ticket
3    from the advertised price.  *See, e.g.*, Thorne Decl. Ex. B.

4    **D.    Second False Advertisement: "Fuel Surcharge" Fee**

5         While the prices advertised are NEVER actually available to consumers, even
6    the manner in which Defendants describe the various add-on fees is false. The first
7    such example of this is that Defendants add on to ticket purchases a fee that is
8    falsely identified as a "fuel surcharge."  But this add on fee is not in fact a "fuel
9    surcharge" fee.

10        A fuel surcharge is commonly understood to be a charge that is charged in
11   situations of a spike in fuel prices.  Silverman Decl. ¶¶ 21–25.  However, as is often
12   the case with those that wish to weave false tales, it is difficult to keep the lies
13   straight.  For example, Defendants provide differing representations on exactly what
14   their "fuel surcharge" is.  Silverman Decl. ¶¶ 26–29; Thorne Decl. Ex. F.

15        In some instances, Defendants suggest that the "fuel surcharge" covers
16   Defendants' fuel costs when there is a spike in fuel prices.  Grant Decl. Exs. A at 1–
17   2, G at 2; Salas Decl. ¶ 7; Thorne Decl. Ex. F at 1–2; Declaration of Brian Torres
18   ("Torres Decl.") ¶ 2.  Defendants also represent that they "may" charge the fee,
19   which is consistent with the notion that the fee covers intermittent spikes in the cost
20   of fuel.  Grant Decl. Exs. A at 1–2, C at 1, G at 2; Thorne Decl. Ex. E at 3, I.  In
21   fact, when presented with a coupon of "Newport Whales" that represented that the
22   "fuel surcharge" would only apply if the cost of fuel exceeded $4 per gallon,
23   Defendants' employee simply falsely represented that fuel cost more than $4 per
24   gallon—*in 2017*.  Grant Decl. ¶¶ 8–10; Grant Decl. Exs. G, H.

25        In reality, Defendants' "fuel surcharge" bears no relation to the movement of

26   _____

27   fuel charges and consumers have come to both accept such a practice and
28   understand such a practice as being legitimate.  Silverman Decl. ¶¶ 24–25.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   market fuel prices because, for at least the past two or more years, Defendants have

2   charged the same $2.50 "fuel surcharge" on every ticket sold without fail both when

3   fuel costs have been high and when they have been low.  Salas Decl. ¶ 7.

4       At times Defendants have suggested, not that the fuel surcharges will be

5   charged in cases of spikes, but rather that the fuel surcharge is intended to cover the

6   overall cost of fuel.  On one portion of Defendants' website for example, it says,

7   "Fuel fees are added to all ticket prices as a separate line item. Fuel fees vary based

8   on length and type of trip. Fuel fees are subject to change without notice."  Thorne

9   Decl. Ex. F at 1; *see* Declaration of Nestor Gomez ("Gomez Decl.") ¶ 2; Gomez

10  Decl. Ex. A; Grant Decl. ¶¶ 3, 7, 10; Grant Decl. Ex. B; Torres Decl. ¶ 2.

11      But even the suggestion that fuel surcharges are intended to cover the costs of

12  fuel is nonsense as the amount collected has nothing do with trying to recover fuel

13  costs (and in any event that is not what a fuel surcharge even is).  The amount

14  collected for the "fuel surcharge" in fact far exceeds the total cost of fuel for a

15  cruise.  *See* Salas Dec. ¶ 8.  As of April 2017, the marine diesel fuel cost at

16  Defendants' fuel vendor[8] was only $2.67 per gallon at the *non-bulk rate*—though

17  Defendants' employees represent that it costs more than $4 when they believe it

18  necessary to close a sale.  Thorne Decl. Ex. F at 2; Grant Decl. ¶¶ 9–10.  Based on

19  the size of the boats Defendants use and the purported length of their cruises,

20  Plaintiffs estimate that Defendants' use no more than 45 gallons of fuel per cruise,

21  which at the non-bulk rate per gallon costs only $120.15 per cruise.  Salas Decl. ¶ 8.

22  At that rate, if Defendants sold only 100 tickets, they would realize a $129.85 profit

23  per cruise.  However, Defendants often sell far more tickets and almost certainly pay

24  a discounted rate for fuel.

25      In sum, the so-called fuel surcharge is a scam on multiple levels.  The fee is

26  _____

27  [8] Defendants represent that they purchase fuel from Hill's Fuel Dock.  Thorne Decl.
    Ex. F at 2.  It appears that this is the same entity as Hill's Boat Service.  *See* Hill's
28  Boat Service, http://www.hillsfueldock.com/ (last visited Sept. 19, 2017).

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4840-1938-4647.4

8

Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Preliminary Injunction

not in any way a fuel surcharge as that term is defined by any authorities.   The fee is no more a legitimate fee than would be an "employee salary surcharge" or "landlord lease fee surcharge".   Every business has costs, and virtually every business has fuel costs to operate.   Deceptively referring to a "fuel surcharge" suggests to the consumer that the consumer is being charged a fee designed to blunt the impact of a sudden and unexpected rise in fuel.  As noted above, this is nonsense as Defendants always charge this "fuel surcharge" regardless of the price of fuel and the charge is neither a "surcharge" nor even designed to actually cover the costs of fuel.  It is subterfuge, plain and simple and the practice must be enjoined.

### E.    Third False Advertisement: "Wharfage" Fee

The next false fee that the Defendants add on is identified as "wharfage."  A common meaning of "wharfage" is that it is charged by a municipality in relation to persons or goods being loaded and unloaded from a ship.[9]  *See Inbesa Am. v. M/V Anglia*, 134 F.3d 1035, 1038 (11th Cir. 1998) (nothing that generally, "'wharfage' is used synonymously with 'dockage.'"); Ballentine's Law Dictionary, *Dockage* (2010) ("Dockage" is defined as "[c]ompensation for use of a wharf; the charge made against a vessel for the privilege of mooring to a wharf or in a slip; also called wharfage."); Salas Decl. ¶ 10.  Here too, Defendants provide various different (and false) justifications for the "wharfage" fee all with the goal of duping the consumer into the false belief that Defendants are doing nothing more than collecting money that is being passed on to someone else.

Defendants falsely represent online that the "wharfage" fee is used for loading and unloading of the dock.  Thorne Decl. Ex. G at 1.  However, the "wharfage" fee

---

[9] This practice is particularly insidious because it is likely consumers have no idea what "wharfage" even is or means.  Silverman Decl. ¶¶ 30–31.  Consumers have no way of knowing that this alleged mandatory charge that is supposedly just being passed on to some third party is a completely made-up concept.  Customers' lack of appreciation for Defendants' artifice is attributable certainly in part to the fact that consumers have no idea what "wharfage" is and likely assume that Defendants (who make their living on the docks) must be providing them with accurate information.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

is not related to loading or unloading, because Defendants charge the "wharfage" fee of 2% of a *total* ticket sale (including, *inter alia*, binoculars and the "fuel surcharge"), and not just on the price of a ticket.  Thorne Decl. Ex. G at 2–3.

In person, Defendants' employees have represented that the fee is a "tax" or is imposed by the landlord on a per-passenger basis or that the landlord charges $0.70 per ticket.  Torres Decl. ¶ 2; Grant Decl. ¶ 3.  (This of course advances the narrative that it is not the Defendants who are being enriched by this fee).  However, the "wharfage" fee is not a tax because cruise tickets are not subject to a sales or use tax[10] and because Newport Beach Municipal Code § 3.34.025 carves out per-passenger taxes or fees for whale watching and sportfishing cruises.  The "wharfage" fee is also not a fixed charge of $0.70 by the landlord, as the "wharfage" fee is calculated as 2% of a total ticket price plus all line items, and so the fee constantly changes.  *See* Thorne Decl. Ex. G at 2–3.  Even to the extent that the landlord did charge some per-passenger fee as part of a lease, this is different from how the fee is represented to consumers online in Defendants' terms and conditions. Thorne Decl. Ex. G at 1.[11]

### III.   A PRELIMINARY INJUNCTION IS PROPER HERE

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction

---

[10] *See* Cal. Bd. of Equalization, *Use Tax—Overview*, http://www.boe.ca.gov/sutax/us etax.htm (last visited Sept. 12, 2017) ("California's sales tax generally applies to the sale of merchandise, including vehicles, in the state. California's use tax applies to the use, storage, or other consumption of those same kinds of items in the state.").
[11] Like the fuel surcharge scam, the "wharfage" deception is designed to induce a consumer into thinking they are paying a mandatory, legitimate charge caused by some third party.  In the case of a "fuel surcharge" it is the fuel market that is causing the additional fee and with "wharfage" it is a municipality that imposes a fee or tax based upon the number of persons embarking on the cruise.  As noted, none of these representations are true and they are deceptively designed by Defendants to inflate the price so that they can continue to advertise ultra-low prices without having to suffer the pain of actually accepting those ultra-low prices.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   is in the public interest." *Johnson v. Macy*, 145 F. Supp. 3d 907, 913 (C.D. Cal.

2   2015).   Alternatively, under the "sliding scale" test, "a party must show serious

3   questions going to the merits [,] a balance of hardships that tips sharply toward the

4   plaintiff, a likelihood of irreparable harm, and that the injunction is in the public

5   interest." *Badr Dhaifallah Ahmed Mohammed v. United States*, No. CV 17-00786

6   AB (PLAx), 2017 U.S. Dist. LEXIS 16405, *3 (C.D. Cal. Jan. 31, 2017) (citing

7   *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011)

8   (quotation marks omitted)).   "A 'serious question' is one on which the movant 'has

9   a fair chance of success on the merits.'" *Id.* (citing *Sierra On-Line, Inc. v. Phoenix*

10  *Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir. 1984)).   "The sliding scale test

11  requires a slightly weaker showing of success on the merits to be outweighed by

12  strong equitable considerations." *Martinez v. Cenlar FSB*, No. SA CV 12-1880-

13  DOC (RNBx), 2012 U.S. Dist. LEXIS 195721, at *3 (C.D. Cal. Nov. 19, 2012)

14  (citing *Alliance for the Wild Rockies*, 632 F.3d at 1134–35).

15         A.    **Plaintiffs Are Likely To Succeed On Their False Advertising**

16               **Claims Under Lanham Act § 43(a)**

17         Plaintiffs are likely to succeed on the merits, or at the very least have

18  established a serious question going to the merits of the Lanham Act claim.   The

19  elements of a false advertising claim under the Lanham Act are:

20             (1) a false statement of fact by the defendant in a commercial
               advertisement about its own or another's product; (2) the statement
21             actually deceived or has the tendency to deceive a substantial segment
               of its audience; (3) the deception is material, in that it is likely to
22             influence the purchasing decision; (4) the defendant caused its false
               statement to enter interstate commerce; and (5) the plaintiff has been or
23             is likely to be injured as a result of the false statement, either by direct
               diversion of sales from itself to defendant or by a lessening of the
24             goodwill associated with its products.

25  *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997)

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   (citations omitted).[12]  "To demonstrate falsity within the meaning of the Lanham
2   Act, a plaintiff may show that the statement was literally false, either on its face or
3   by necessary implication, or that the statement was literally true but likely to
4   mislead or confuse consumers."  *Id.* (citation omitted)).

5         Literal falsity is established when a statement is false "either on its face or by
6   necessary implication . . . ."  *Trekeight, LLC v. Symantec Corp.*, No. 04-CV-1479 H
7   (BLM), 2006 U.S. Dist. LEXIS 100609, at *13 (S.D. Cal. May 23, 2006) (citations
8   and quotation marks omitted).  "To find an advertisement 'literally false' by
9   'necessary implication,' the claim must be analyzed in its entirety to determine
10  whether the audience would recognize the claim as readily as if it had been
11  explicitly stated."  *Am. Optometric Soc'y, Inc. v. Am. Bd. of Optometry, Inc.*, No.
12  CV 10-03983 AHM (FFMx), 2012 U.S. Dist. LEXIS 81379, at *19 (C.D. Cal. June
13  12, 2012) (citations and quotation marks omitted).  Literal falsity is evaluated
14  "without reference to consumer confusion."  *Compaq Computer Corp. v. Packard
15  Bell Elecs.*, 163 F.R.D. 329, 336 (N.D. Cal. 1995) (citations and quotation marks
16  omitted).

17        "Even if an advertisement is not literally false, relief is available under
18  Lanham Act § 43(a) if it can be shown that the advertisement has misled, confused,
19  or deceived the consuming public."  *Southland Sod*, 108 F.3d at 1140 (citations
20  omitted).  "Although materiality in false advertising claims is 'typically' proven
21  through consumer surveys, nothing in the Lanham Act, nor under our precedents,
22  requires a plaintiff to use such surveys."  *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d

23  _____

24  [12] We do not anticipate that Defendants will challenge that their advertisements were
25  entered into interstate commerce, which is defined as "commerce which may
     lawfully be regulated by Congress."  15 U.S.C. § 1127.  "'It is well settled that so
26  defined "commerce" includes intrastate commerce which "affects" interstate
     commerce.'"  *Orchard Supply Hardware LLC v. Home Depot USA, Inc.*, 967 F.
27  Supp. 2d 1347, 1365 (N.D. Cal. 2013) (citing *Thompson Tank & Mfg. Co., Inc. v.
     Thompson*, 693 F.2d 991, 993 (9th Cir. 1982)).  Defendants advertise online, in
28  print, and in person.  These advertisements are "in commerce."

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   1105, 1110–11 (9th Cir. 2012) (citing *Southland Sod*, 108 F.3d at 1140).

2           **1.      Plaintiffs Are Likely To Succeed In Establishing That**

3                    **Defendants Falsely Advertise The Prices Of Their Cruises**

4           Plaintiffs have proffered substantial evidence that Defendants advertise

5   pricing that is **never** available to a customer.  *See* Part II.C, *supra*.  This is a classic

6   bait-and-switch scheme, where "one of the dangers is that the consumer will rely on

7   the deceptive advertising to decide to buy merchandise. Then, when the deception is

8   revealed, the consumer, now invested in the decision to buy and swept up in the

9   momentum of events, nonetheless buys at the inflated price, despite his or her better

10  judgment."  *Veera v. Banana Republic, LLC*, 6 Cal. App. 5th 907, 921 (Cal. App.

11  2016).  In *Veera*, the Court noted:

12          In opposition to Banana Republic's summary judgment motion,
            plaintiffs produced evidence that in reliance on the allegedly false
13          advertising, they were lured to shop at certain Banana Republic stores
            and selected various items for purchase at the advertised discount.
14          However, as the items were being rung up at the cash register, plaintiffs
            were told for the first time that the advertised discount did not apply to
15          their chosen merchandise. Having waited in line to purchase the
            selected items, and out of frustration and embarrassment, they
16          ultimately bought some (but not all) of the items they chose even
            though the discount did not apply.
17
18  *Id.* at 909.  This is precisely what occurs as a result of Defendants' advertising.  *See,*

19  *e.g.*, Thorne Decl. Exs. B, D.  Further, consumers assume that all of Defendants'

20  competitors charge the same "fuel surcharge" and "wharfage" fees, such that buying

    a ticket from Defendants will be cheaper, no matter what.[13]  Silverman Decl. ¶ 29.
21
22          These false advertisements are material to a consumer's purchasing choice,

23  because consumers make their decisions in large part based on price.  Silverman

24  Decl. ¶¶ 16–19, 28–29, 31.  If a consumer were aware from the outset that the prices

25  offered were not accurate, and that there were hidden fees that were themselves not

26  accurate and were not charged by competitors, then that consumer would likely

27
    _____
28
    [13] Plaintiffs do not charge "wharfage" or "fuel surcharges".  Salas Decl. ¶¶ 9–10.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

choose to do business elsewhere.  Silverman Decl. ¶¶ 20, 29.

### 2. Plaintiffs Are Likely To Succeed In Establishing That Defendants Falsely Advertise The Nature Of The "Fuel Surcharge" Fee

Plaintiffs have set forth sufficient evidence that Defendants' "fuel surcharge" fee representations are literally false.  See Part II.D, *supra*.  Numerous authorities recognize that using so-called "fuel charges" to generate profits is deceptive.  For example, the Department of Transportation—which oversees the industries in which the parties hereto operate—has promulgated the following aviation-industry guidance relating to purported fuel surcharges:

> When a cost component is described as a fuel surcharge, for example, that amount must actually reflect a reasonable estimate of the per-passenger fuel costs incurred by the carrier above some baseline calculated based on such factors as the length of the trip, varying costs of fuel, and number of flight segments involved.

U.S. Dep't of Transp., Additional Guidance On Airfare/*Air Tour Price Advertisements* at 2 (Feb. 21, 2012), *available at* https://cms.dot.gov/sites/dot.gov/files/docs/Notice.Taxes_.fees_.sam_.dl_.13.website_0.pdf.

A growing number of federal and state courts have held that failure to honestly advertise surcharges, including fuel surcharges, is actionable under various state laws that prohibit false advertising.  This is so even when some portion of purported "fuel surcharge" fees are actually used for fuel:

> Defendants argue, much as they did in their first motion to dismiss, that Plaintiff's FDUTPA claim must be dismissed, with prejudice, because the terms "fuel surcharge" and "environmental charge" are not deceptive, those terms are disclosed in Plaintiff's agreement and invoices, and Plaintiff fails to identify any statements or representations by Defendants as to how the fees would be calculated that could support a charge of deception or falsity. . . .
>
> As explained by Plaintiff in its Response, the Amended Complaint alleges the "fuel surcharge" is not calculated from the EIA weekly reporting of diesel fuel as is represented in the contract's Terms and Conditions, and in fact, no calculation whatsoever is performed to arrive at the fuel surcharge amount; the "environmental charge" is not charged to recover environmental compliance costs; a reasonable consumer would be deceived by use of the challenged terms, including

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4840-1938-4647.4

14

Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Preliminary Injunction

by representations found on Defendants' affiliated websites; and the fees are deceptive as Defendants were already recovering fuel and environmental costs in the base rate they charge their customers.

*Deere Constr. LLC v. Cemex Constr. Mtls. Fla., LLC*, No. 15-24375-CIV-ALTONAGA/O'Sullivan, 2016 U.S. Dist. LEXIS 111145, at *9–10 (S.D. Fla. Jul. 26, 2016) (citations omitted).  The *Cemex* court went on to hold:

> [T]hat the terms are disclosed in the agreements and invoices does not defeat the sufficiency of the FDUTPA claim. Had the terms been disclosed and their purpose and intent accurately described in the agreements and invoices, the Court could see how a claim predicated on deception and falsity would fail. . . . But Defendants' documentation does not advise the purchaser the charges have nothing to do with fuel or environmental costs, and instead are ways for Defendants to increase their profit from the transaction, as is alleged by Plaintiff and accepted as true.

*Id.* at *16 (emphasis added).

Defendants' labeling of "fuel surcharge" is similarly deceptive because Defendants' customers are being led to believe that the fee is designed to cover the costs of a spike in fuel which the customer believes he or she has no choice in paying.  *See* Silverman Decl. ¶ 27.  Defendants have no justification for labeling any revenue collected as a "fuel surcharge," and Plaintiffs have therefore established  a likelihood of success on the merits.

The false nature of the "fuel surcharge" fee is material to consumers, who have no way of knowing that the "fuel surcharge" is no such thing.  Silverman Decl. ¶ 26–29.  Consumers assume that the "fuel surcharge" is a legitimate fee and/or that all competitors charge this fee.  Silverman Decl. ¶ 29.  If consumers were informed of the false nature of the fee, they would likely not purchase tickets from Defendants.  Silverman Decl. ¶ 29.

### 3. Plaintiffs Are Likely To Succeed In Establishing That Defendants Falsely Advertise The Nature Of The "Wharfage" Fee

As is set forth above, Plaintiffs have proffered a substantial amount of evidence to satisfy their burden at this stage that Defendants make false

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

representations about their "wharfage" fee, namely that it is a tax, is used for loading and unloading of their ships, or is charged at a fixed rate by the landowner. *See* Part II.E, *supra*.  Furthermore, a number of courts have concluded that falsely representing or suggesting that fees are imposed by some governmental body or as some required fee is deceptive:

> We conclude that Integra engaged in an unfair or deceptive act or practice as a matter of law when it labeled the surcharge it imposed on local business service customers a [presubscribed interexchange carrier charge ("PICC")]. The use of the term PICC had the capacity to deceive a substantial portion of the public into thinking the surcharge was FCC regulated and required. Whether the surcharge was FCC regulated and required could be of material importance to a customer's decision to purchase the company's services.

*Indoor Billboard/Wash., Inc. v. Integra Telecom. of Wash., Inc.*, 162 Wn. 2d 59, 78 (Wash. 2007); *see also Dwyer v. J.I. Kislyak Mortg.*, 103 Wn. App. 542, 547 (Wash. App. 2000) (including non-required fax cost fee on a list of required fees to pay off mortgage was deceptive).

Defendants' usage of the term "wharfage" fee is particularly deceptive because most consumers have likely never heard the term or have any idea what it actually means.  Silverman Decl. ¶ 30.  The usage of this fee is material to consumers because it is passed off as a legitimate charge by appearing fairly modest in comparison to the total price (just as a tax would be).  Silverman Decl. ¶¶ 30–31. However, customers would likely not purchase a cruise through Defendants if the customers understood the nature of the fee.  Silverman Decl. ¶¶ 30–31.

### B.    Plaintiffs Are Likely To Succeed On Their California Business And Professions Code § 17500 False And Misleading Advertising Claim

Plaintiffs have also established a likelihood of success for Defendants' false advertising under California law.  "California courts construe Section 17500 to extend beyond literal falsities.  The statute has been interpreted broadly to encompass not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4840-1938-4647.4

16

Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Preliminary Injunction

1  deceive or confuse the public." *Davis v. HSBC Bank*, 691 F.3d 1152, 1162 (9th Cir.

2  2012) (citations, quotations, and alterations omitted).  For the reasons set forth

3  above in the Lanham Act analysis, Plaintiffs have set forth sufficient evidence to

4  establish that they are likely to succeed on the merits of their California Business

5  and Professions Code § 17500 false advertising claim.

6       **C.     Plaintiffs Are Likely To Succeed On Their California Business And**

7              **Professions Code § 17200 Unfair Competition Claim**

8       Plaintiffs are also likely to succeed on their claim for unfair competition

9  under California Business and Professions Code § 17200.  A claim for unfair

10  competition under section 17200 may be established for fraudulent, unfair, or

11  unlawful conduct.  *See* Cal. Bus. & Prof. Code § 17200.

12       As to fraud, "[t]he test is whether the public is likely to be deceived.  This

13  means that a section 17200 violation, unlike common law fraud, can be shown even

14  if no one was actually deceived, relied upon the fraudulent practice, or sustained any

15  damage." *People ex rel. Bill Lockyer v. Fremont Life Ins. Co.*, 104 Cal. App. 4th

16  508, 516–17 (Cal. App. 2002) (citations and quotation marks omitted).  As set forth

17  above, Defendants' advertisements are likely to deceive customers as to price and

18  the fee structure.

19       As to unfairness, "[t]his prong is intentionally broad, thus allowing courts

20  maximum discretion to prohibit new schemes to defraud. . . .  The *unfairness* prong

21  has been employed to enjoin deceptive or sharp practices." *Lockyer v*, 104 Cal.

22  App. 4th at 515 (Cal. App. 2002) (citation omitted).  Here too, Plaintiffs have

23  demonstrated a likelihood of success on the merits by demonstrating Defendants'

24  false and deceptive advertisements.

25       As to unlawfulness, "'[v]irtually any state, federal or local law can serve as

26  the predicate for an action' under section 17200." *Lockyer v*, 104 Cal. App. 4th at

27  515 (Cal. App. 2002) (citation omitted).  This can include regulations. *See Watson*

28  *Labs., Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F. Supp. 2d 1099, 1120 (C.D. Cal.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4840-1938-4647.4

17

Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Preliminary Injunction

1  2001) (citation omitted)).  Defendants violated the California Civil Code by using

2  false statements concerning their geographic origin in their advertisements (Cal.

3  Civ. Code § 1770(a)(4), and false statements concerning the existence of price

4  reductions with their purported special prices (Cal. Civ. Code § 1770(a)(13).  (*See*

5  Cal. Civ. Code §§ 1770(a)(2)–(3)).  Defendants further violated the Civil Code and

6  federal regulations by offering bait-and-switch pricing.  (*See* 16 C.F.R. §§ 238.0,

7  238.2; Cal. Civ. Code § 1770(a)(9).)

8       In sum, Plaintiffs have set forth sufficient evidence of misconduct that

9  constitutes actionable harm by Defendants on the section 17200 claim.

10       **D.    Plaintiffs Will Suffer Irreparable Harm Absent An Injunction**

11       Plaintiffs will suffer immediate and irreparable harm absent a preliminary

12  injunction.  "[I]ntangible injuries, such as damage to ongoing recruitment efforts

13  and goodwill, qualify as irreparable harm."  *Rent-A-Center, Inc. v. Canyon*

14  *Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (citation

15  omitted).  "Harm resulting from lost profits and lost customer goodwill is

16  irreparable because it is neither easily calculable, nor easily compensable and is

17  therefore an appropriate basis for injunctive relief."  *Ebay, Inc. v. Bidder's Edge,*

18  *Inc.*, 100 F. Supp. 2d 1058, 1066 (N.D. Cal. 2000).  "Where, as here, the denial of

19  preliminary injunctive relief would encourage an increase in the complained of

20  activity, and such an increase would present a strong likelihood of irreparable harm,

21  the plaintiff has at least established a possibility of irreparable harm."  *Id.*

22       First, Defendants' conduct has caused serious monetary harm to Plaintiffs,

23  and will continue to cause such harm.  In just the last two years, Plaintiffs have

24  experienced a $509,839 loss of profits.  Holstrom Decl. ¶ 4; Holstrom Decl. Ex. B.

25  This is in spite of an increase in advertising of $360,101 for a total advertising cost

26  of $546,080, an increase of their fleet of boats (their infrastructure) by *more than*

27  *60%*, and the fact that many local competitors have ceased doing business.

28  Holstrom Decl. ¶¶ 3–7; Holstrom Decl. Ex. B; Salas Decl. ¶¶ 18–19.  In other


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4840-1938-4647.4

18

1   words, absent immediate judicial intervention, Plaintiffs will have to expend
2   hundreds of thousands of dollars more in advertising and continue to increase their
3   fleet size *just to stay at a point where they are losing potential income*.

4         Second, Plaintiffs will continue to lose future business opportunities. *Polara*
5   *Eng'g, Inc. v. Campbell Co.*, No. SA CV 13-00007-DFM, 2017 U.S. Dist. LEXIS
6   27304, at *64 (C.D. Cal. Feb. 27, 2017) (noting that the plaintiff "suffered
7   irreparable harm from lost business opportunities"). Generally, out-of-state tourist
8   customers only will ever visit one Southern California whale watching company,
9   and thus there is only one chance to obtain their business. Salas Decl. ¶ 20.
10  Coupled with the fact that this is a word-of-mouth business (i.e., people tell their
11  family in friends about the cruise or share their experience on social media such as
12  Facebook or Instagram), each customer lost to Defendants' false advertising has the
13  ability to exponentially drive Plaintiffs' business away. Salas Decl. ¶ 22. In effect,
14  a customer in Iowa may see a post on Facebook by a customer who went to Davey's
15  Locker and choose not even to investigate Defendants' other competitors. The same
16  is true of local customers, who, if they ever do a repeat cruise, tend to book their
17  repeat cruise at the business where they originally cruised. Salas Decl. ¶ 21.

18        Third, Defendants' use the perception of "competition" to make prices appear
19  fixed between $10 and $16 (*see* Thorne Decl. Ex. A at 1), which will cause
20  reputational harm to Plaintiffs. *See Neighborhood Assistance Corp. of Am. v. First*
21  *One Lending Corp.*, No. SACV 12-463 DOC(MLGx), 2012 U.S. Dist. LEXIS
22  67950, at *54 (C.D. Cal. May 15, 2012) ("the loss of the ability to control one's
23  reputation constitutes irreparable harm for purposes of preliminary injunctive
24  relief."). Indeed, Harbor Breeze frequently received calls from consumers who
25  asked for information about prices and then declined to continue with the call when
26  learning of the prices—now, those calls have virtually stopped or are simply
27  demands to match Defendants' prices. Salas Decl. ¶¶ 11–12; Turner Decl. ¶¶ 3–5.

28        Absent immediate judicial intervention, Plaintiffs will suffer monetary losses,

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4840-1938-4647.4

19

Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Preliminary Injunction

1  reputational harm, and loss of business opportunities, and will be forced to pay more

2  and more in advertising and infrastructure expenditures just to keep losing money.

3       **E.     The Equities Tip Sharply In Plaintiffs' Favor**

4       The equities tip greatly in favor of granting preliminary injunctive relief.

5  Courts in this Circuit have noted that "the balance of hardships tips sharply in

6  [plaintiff's] favor, since the potential harm to [plaintiff] outweighs the hardship

7  advanced by [defendant]." *Sun Microsys., Inc. v. Microsoft Corp.*, 87 F. Supp. 2d

8  992, 998 (N.D. Cal. 2000).   And "[a]s a general matter, 'there is no harm to a

9  defendant from an injunction which prevents continuing dissemination of false

10  statements.'" *Homeland Housewares, LLC v. Euro-Pro Op. LLC*, No. CV 14-03954

11  DDP (MANx), 2014 U.S. Dist. LEXIS 117587, at *14, 2014 WL 4187982 (C.D.

12  Cal. Aug. 22, 2014) (quoting *Pom Wonderful LLC v. Purely Juice, Inc.*, No. CV-07-

13  02633 CAS (JWJx), 2008 U.S. Dist. LEXIS 55426, at 42 (C.D. Cal. July 17, 2008));

14  *see id.* ("Such an injunction would not prevent Euro-Pro from describing the quality

15  of its blenders, comparing the quality of such products to that of Homeland's

16  products, or touting its unique features, so long as it does not make claims that are

17  false.").

18       The injunction Plaintiffs seek would prohibit advertising that is false and

19  deceptive, and which has caused and will continue to cause serious damage to

20  Plaintiffs absent the Court's intervention.   The burden on Defendants—assuming

21  that they can characterize not defrauding consumers as a burden—would only be *de*

22  *minimis*.    That is, Defendants will only be prohibited from making false

23  advertisements.    "Here, the relief sought by plaintiff merely requires that

24  [defendants] participate in a level marketplace, and advertise [their] products

25  without the use of false statements and misrepresentations. 'Such requested relief

26  poses little, if any, harm to [the defendant].'" *Pom Wonderful*, 2008 U.S. Dist.

27  LEXIS 55426, at *42 (quoting *Sun Microsys.*, 87 F. Supp.2d at 998).  The balance

28  of the equities favors an injunction that would prohibit the Defendants' misconduct.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4840-1938-4647.4

20

Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Preliminary Injunction

### F.   An Injunction Prohibiting False And Misleading Forms Of Advertisement Is In The Public Interest

The public interest factor weighs *heavily* in favor of granting preliminary injunctive relief.  "'There is a strong public interest in preventing false advertising of products in the marketplace.'"  *Homeland Housewares, LLC v. Euro-Pro Operating LLC*, No. CV 14-03954 DDP (MANx), 2014 U.S. Dist. LEXIS 117587, at *15 (C.D. Cal. Aug. 22, 2014) (citing *POM Wonderful LLC v. Purely Juice, Inc.*, No. CV-07-02633 CAS (JWJx), 2008 U.S. Dist. LEXIS 55426, at *43 (C.D. Cal. July 17, 2008) *aff'd*, 362 F. App'x 577 (9th Cir. 2009) (internal citation omitted)). Likewise, "[t]he public interest is not disserved by an injunction that precludes illegal or tortious conduct."  *Shell Offshore, Inc. v. Greenpeace, Inc.*, 864 F. Supp. 2d 839, 853 (D. Alaska 2012).  In other words, "the public interest is served by injunctions that reasonably 'fence in' Defendants from engaging in behavior related to their previous illegal conduct."  *Consumer Fin. Prot. Bureau v. Siringoringo*, No. SACV 14-01155 JVS (AJWx), 2016 U.S. Dist. LEXIS 4272, at *15 (C.D. Cal. Jan. 7, 2016).

Defendants have engaged in serial and flagrant false advertising in an effort to dupe unknowing consumers into believing that Defendants offer their cruises in locations throughout Southern California and sell their tickets for a drastically lower price than Plaintiffs.  This is particularly so for tourists who have no reason to suspect Defendants' con and may only realize that they have been tricked after it is too late to obtain a refund.  Defendants' false and reprehensible misconduct is likely to deceive consumers in the myriad ways that are set forth above.  It is not subject to reasonable dispute that the public has a serious interest in honest advertising, and not the kind of advertising employed by Defendants.  Thus, the public interest factor favors granting the preliminary injunction.

### IV.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that Court enter an

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1 order granting Defendants' preliminary injunction as requested herein.

2 DATED: September 20, 2017         LEWIS BRISBOIS BISGAARD & SMITH LLP

3

4

5                                  By: _____
                                       Daniel C. DeCarlo
6                                      Attorneys for Plaintiff Harbor Breeze
                                       Corporation and L.A. Waterfront Cruises,
7                                      LLC

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28