UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

|  |  |
|---|---|
| HARBOR BREEZE CORPORATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> NEWPORT LANDING SPORTFISHING, INC., et al., <br><br> Defendants. | Case No.: SACV 17-01613-CJC(DFMx) <br><br> **ORDER DENYING PLAINTIFFS' MOTION FOR ORDER FOR DISGORGEMENT OF PROFITS [Dkt. 276], GRANTING IN PART PLAINTIFFS' MOTION FOR A PERMANENT INJUNCTION [Dkt. 277], AND DENYING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES [Dkt. 278]** |

## I. INTRODUCTION

Plaintiffs Harbor Breeze Corporation and L.A. Waterfront Cruises, LLC brought this false advertising lawsuit against Defendants Newport Landing Sportfishing, Inc., Daveys Locker Sportfishing, Inc., Ocean Explorer, Inc., and Freelance Sportfishing, Inc.

(Dkt. 1.) The case proceeded to trial before a jury in June 2019. After five days of trial, the jury returned a verdict finding Defendants had engaged in false advertising in violation of the Lanham Act. (Dkt. 271.) The jury, however, awarded Plaintiffs $0 in actual damages and $0 in disgorgement of profits. (*Id.*)

Before the Court are three post-trial motions: (1) Plaintiffs' motion for an order disgorging Defendants' profits, (Dkt. 276), (2) Plaintiffs' motion for a permanent injunction, (Dkt. 277), and (3) Plaintiffs' motion for attorneys' fees, (Dkt. 278). For the following reasons, Plaintiffs' motions for disgorgement of profits and for attorneys' fees are **DENIED**. Plaintiffs' motion for a permanent injunction is **GRANTED IN PART**.

## II. BACKGROUND

This whale of a tale concerns the marketing to customers in the multimillion-dollar whale watching industry of the Los Angeles and Orange County metropolitan area. Plaintiffs and Defendants are competitors in this industry. Both offer whale watching cruises for locals and tourists off the California coast. Plaintiffs operate in Long Beach and San Pedro in Los Angeles County, and Defendants operate in Newport Beach in Orange County.

At issue in this case is how Defendants advertised their whale watching cruises to customers. In September 2017, Plaintiffs filed this lawsuit in federal court, asserting claims for (1) false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a), (2) violation of California Business and Professions Code §§ 17200 *et seq.*, and (3) violation of California Business and Professions Code §§ 17500 *et seq.* This case proceeded to trial before a jury in June 2019.

At trial, Plaintiffs focused on two aspects of Defendants' advertising. First, Plaintiffs contended that Defendants engaged in false advertising with respect to their location. For instance, if a consumer searched on the internet for "Long Beach whale watching," the consumer would be directed to a page on Defendants' website, which made repeated use of the phrase "Long Beach residents and visitors," suggesting that Defendants' cruises depart from Long Beach, not Newport Beach. (*See* Dkt. 292 [Day 1 Vol. III Transcript] at 74:14–75:8.) Second, Plaintiffs asserted that Defendants engaged in false advertising with respect to their pricing. Defendants advertised, for example, a "$10 whale watching special." (*Id.* at 75:19–76:5.) A consumer, however, could never get on Defendants' whale watching cruise for only ten dollars. In addition to that $10 price, Defendants also charged a $2.50 fuel surcharge and a 2% wharfage fee. (*See id.* at 76:6–77:22.) There was also evidence that calling these extra charges a "fuel surcharge" or "wharfage fee" was misleading because these fees were a way to get extra revenue, not tied to actual expenses, and Defendants did not disclose these fees until late in the process. (*See* Dkt. 294 [Day 3 Vol. I Transcript] at 123:6–128:4.)

After five days of trial, the jury reached a verdict. The jury found that Plaintiffs had proven all elements necessary to find that the Defendants had engaged in false advertising in violation of the Lanham Act. (Dkt. 271.) On the question of damages, however, the jury awarded $0 for Plaintiffs' actual damages and $0 for Defendants' profits attributable to the false advertising. (*Id.*)

//

## III. DISGORGEMENT OF PROFITS

Plaintiffs ask this Court to grant equitable relief in the form of disgorgement of profits. (Dkt. 276.) The Lanham Act provides that a plaintiff may recover the defendant's profits if the plaintiff prevails on a claim for false advertising. *See* 15 U.S.C. § 1117(a). A claim for disgorgement of profits is an equitable remedy. *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1074 (9th Cir. 2015). In the Ninth Circuit, to recover a defendant's profits, the plaintiff must prove that the false advertising was willful. *See Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 439 (9th Cir. 2017) (interpreting the Lanham Act's remedies provision to require willfulness to recover disgorgement of profits for trademark infringement). Willfulness "carries a connotation of deliberate intent to deceive" and "require[s] a connection between a defendant's awareness of its competitors and its actions at those competitors' expense." *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 892 F.2d 1400, 1406 (9th Cir. 1993) (quoting *ALPO Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 966 (D.C. Cir. 1990)), *abrogated on other grounds by SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 839 F.3d 1179 (9th Cir. 2016).

While disgorgement of profits is an equitable remedy, the parties and the Court submitted this question to the jury. The Court instructed the jury that if Plaintiffs proved they had been injured as a result of the false advertising, Plaintiffs may recover "[a]ny profits earned by the [D]efendants that are attributable to the [D]efendants' false advertising, if the [P]laintiffs prove that the [D]efendants' false advertising was willful." (Dkt. 259 [Jury Instructions] No. 17.) The Court further instructed the jury that "[t]he [D]efendants' false advertising is willful if the [D]efendants knew their advertising was false or misleading, or they acted with reckless disregard for, or willful blindness to, the false or misleading nature of their advertising." (*Id.* No. 20.) Based on these instructions, the jury determined that Plaintiffs were entitled to $0 for disgorgement of

Defendants' profits. Plaintiffs now ask the Court to disregard the jury's verdict and award them Defendants' profits.

Neither party addresses what standard the Court should apply. Generally, where a court tries legal and equitable issues together in the same proceeding, legal issues are to be determined first, and the findings of the jury are binding on the court, as the trier of equitable claims. *See GTE Sylvania, Inc. v. Cont'l T.V., Inc.*, 537 F.2d 980, 986 n.7 (9th Cir. 1976), *aff'd*, 433 U.S. 36 (1977). Here, Plaintiffs chose to submit the question of disgorgement of profits to the jury. Consequently, the Court must give full effect to that verdict. *See Thompson v. Parkes*, 963 F.2d 885, 890 (6th Cir. 1992) (finding that although Federal Rule of Civil Procedure 39(c) allows a court to submit equitable issues to an advisory jury, the court must give "full effect" to a jury verdict if the court did not specify it was an advisory jury prior to trial).[1] Where a jury has decided an issue, a court can set aside that verdict and grant judgment as matter of law only if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the [prevailing] party." Fed. R. Civ. P. 50(a)–(b). And where substantial evidence supports the jury's verdict, a court may grant a new trial if "the verdict is contrary to the clear weight of the evidence." *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 819 (9th Cir. 2001) (quoting *United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir. 1999)).

The Court finds no reason to set aside the jury's verdict. Contrary to Plaintiffs' assertion, the jury's verdict is supported by substantial evidence. First, a jury could reasonably find that Defendants' false advertising was not willful. Pam Watts, one of the individual owners of Defendants, testified that Defendants had made changes to their

---

[1] The Court and the parties had agreed to consult an advisory jury, pursuant to Rule 39(c), for findings related to Defendants' unclean hands equitable defense. (*See also* Dkt. 271 [Verdict Form] [asking the jury whether Plaintiffs had also engaged in false advertising in Questions 7, 8, and 9].) Neither the Court nor the parties discussed submitting the issue of disgorgement of profits to the jury on an advisory basis.

websites and advertisements following state court litigation in 2012 over false advertising and afterwards, Defendants thought they were in compliance.  (Dkt. 294 [Day 3 Vol. I Transcript] at 20:3–22.)  One of those changes was to add language on every page that Defendants' boats departed from "beautiful Newport Beach."  (*See* Dkt. 293 [Day 2 Vol. I Transcript] at 10:16–25.)  Second, a jury could reasonably find that Defendants' profits were not attributable to false advertising.  *See Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge*, 316 U.S. 203, 206 (1942) (holding that a plaintiff is not entitled to profits not attributable to the defendant's unlawful conduct under the Lanham Act).  There was evidence that, even including the extra fees, Defendants offered cheaper whale watching cruises than Plaintiffs.  (*See* Dkt. 293 [Day 2 Vol. I Transcript] at 116:6–117:12, 123:9–13.)  The jury reasonably could have concluded that Defendants' profits were attributable to its competitive price, not any false advertising they had done.  Consumers might care more about getting a good deal than where the cruise departs or whether a few dollars get added to the ticket cost.

Nor is the jury's verdict against the clear weight of the evidence.  If the Court were to take its own view of the evidence, it would reach the same result.  With respect to Defendants' advertising on location, the evidence at trial showed that Defendants intended to optimize their search engine results, not confuse consumers.  There was also no evidence that Defendants intended to mislead consumers with respect to their ticket prices—even if it was, in fact, misleading—since Defendants ultimately disclosed all fees prior to purchase.  Because Plaintiffs have failed to prove that Defendants' false advertising was willful, Plaintiffs' motion for order for disgorgement of profits is **DENIED**.

//

## IV. PERMANENT INJUNCTION

Plaintiffs seek a permanent injunction enjoining Defendants from engaging in further false advertising. "In most cases, after a full trial finding false advertising, a final injunction is appropriate." McCarthy on Trademarks and Unfair Competition § 27:37 (5th ed. 2019). Similarly, with respect to Plaintiffs' state law claims under the Uniform Competition Law, an injunction is the primary form of available relief. *See Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 790 (2010). To obtain an injunction, a plaintiff must satisfy a four-factor test, demonstrating "(1) that it has suffered irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The Court concludes that all four factors weigh in favor of an injunction.

First, Plaintiffs have suffered irreparable injury. The jury found that one or more of Defendants' statements at issue caused or was likely to cause damage to Plaintiffs. (Dkt. 271 [Verdict Form].) Nilda Langston, Harbor Breeze Corporation's vice president of operations, testified that Plaintiffs regularly receive calls from customers who are confused by Defendants' advertising and who believe that Plaintiffs offer Defendants' $16 whale watching special. (Dkt. 293 [Day 2 Vol. I Transcript] at 111:12–114:1, 116:6–117:12.) Langston also testified that a customer once attempted to board Plaintiffs' whale watching cruise with a Groupon voucher from Defendants. (*Id.* at 117:13–118:12.) When the customer became upset, Langston ultimately let him take Plaintiffs' cruise for free. (*Id.* at 118:13–18.) Other employees similarly testified about confused and angry

customers. (*See id.* at 141:6–145:8.) There was also evidence that this consumer confusion has harmed Plaintiffs' business reputation and damaged their goodwill.[2]

Second, legal remedies are inadequate. Here, Plaintiffs have established harm to their business reputation and goodwill. This kind of harm is difficult to quantify. *See Apple Inc. v. Psystar Corp.*, 673 F. Supp. 2d 943, 949–50 (N.D. Cal. 2009) ("[A]n award of damages would be inadequate, simply because the harm caused to [the plaintiff's] reputation, goodwill, and brand is difficult, if not impossible, to quantify."), *aff'd*, 658 F.3d 1150 (9th Cir. 2011); *see also Rent-A-Ctr., Inc. v. Canyon Television & Appliance*, 944 F.2d 597, 603 (9th Cir. 1991) ("[I]ntangible injuries, such as damage to . . . goodwill, qualify as irreparable harm."). Indeed, the jury was unable to find a reasonable basis to quantify Plaintiffs' damage and awarded no monetary relief.

Third, the balance of hardships favors an injunction. In determining whether injunctive relief is appropriate, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Klein v. City of San Clemente*, 584 F.3d 1196, 1199–1200 (9th Cir. 2009). Here, the jury found that Defendants have engaged in false advertising. An injunction in favor of Plaintiffs would serve the narrow purpose of preventing such false advertising in the future. It would not be a hardship for Defendants to refrain from making false or misleading statements. In the absence of relief, Plaintiffs will continue to suffer harm to their reputation and goodwill.

---

[2] Plaintiffs also submit declarations from other whale watching operators in Southern California to support the assertion that Defendants' acts irreparably harm other whale watching providers. (*See* Dkts. 282–85.) Defendants object to the admissibility of these declarations. (*See* Dkts. 304–07.) As the Court does not consider these declarations, it does not need to address Defendants' evidentiary objections.

Case 8:17-cv-01613-CJC-DFM Document 313 Filed 08/26/19 Page 9 of 14 Page ID #:6646

Lastly, the public interest favors an injunction. There is a public interest in ensuring honest advertising. *See* McCarthy on Trademarks and Unfair Competition § 27:36 (5th ed. 2019) ("An injunction can vindicate the public interest in truthful advertising."). There is also a public interest in favor of full and honest competition.

Defendants argue the injunction would be moot because they have already changed their advertising. But this provides no guarantee that they will keep those changes in place. Since Defendants could immediately return to their prior ways, a permanent injunction is necessary to ensure that Defendants do not repeat their false advertising as soon as this case ends. *See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1121–22 (C.D. Cal. 2007) ("A private party's discontinuation of unlawful conduct does not make the dispute moot, however. An injunction remains appropriate to ensure that the misconduct does not recur as soon as the case ends." (quoting *BMG Music v. Gonzalez*, 430 F.3d 888, 893 (7th Cir. 2005))). As all four factors weigh in Plaintiff's favor, the Court will exercise its discretion to issue an injunction.

The Court must now consider the terms and scope of a permanent injunction. The scope of an injunction is within the broad discretion of the district court. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 829 (9th Cir. 2011). An overly broad injunction, however, risks burdening truthful commercial speech, which is protected under First Amendment. The First Amendment thus requires that an injunction against false advertising be "narrowly drawn." *See Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 565 (1980); *TrafficSchool.com*, 653 F.3d at 830 ("The district court [is] required to tailor the injunction so as to burden no more protected speech than necessary.").

In crafting the injunction, the Court must fulfill its obligation to prevent Defendants from misleading the public with false advertising while protecting

Defendants' First Amendment rights. *See U-Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1042 (9th Cir. 1986). The Ninth Circuit achieved this goal in *U-Haul* by modifying an injunction to prohibit only false or deceptive advertising, where the injunction otherwise seemed to prohibit future comparative advertising even if it was truthful. *See id.* at 1042–43. And the injunction in *TrafficSchool.com* failed to meet this balance when it required the defendant to display a "splash screen" to all visitors to a website and visitors had to click though the splash screen to access the site. 653 F.3d at 820. This injunction burdened more protected speech than necessary because it applied to *all* content on the website, not just deceptive speech. *Id.*

With these principles in mind, the Court will make several changes to Plaintiffs' proposed permanent injunction. First, the Court declines to require Defendants to place a statement of their location on *all* advertisements or *all* of Defendants' webpages. In this regard, Plaintiffs' proposed injunction is overbroad. The Court will instead tailor the injunction to require the disclosure of Defendants' location of departure for the advertising at issue—namely, webpages and advertisements that *repeatedly* use the name of another city, making it seem as if Defendants' whale watching cruises depart from a city other than Newport Beach. It is not misleading, for example, for Defendants to state on their website that they are about twenty miles away from Long Beach. But a repeated reference to Long Beach, without a clear disclosure regarding Defendants' location of departure, may mislead or confuse consumers.

Second, the Court will not require Defendants to edit their webpages' source code to include the text "Newport Beach Cruise Operator" in the title tag or the phrase "All Cruises Depart from Newport Beach" in the description tag. Text that appears in title tags or description tags affects how the webpage appears in search engine results. By requiring Defendants to use certain phrases on all webpages, the proposed injunction would significantly burden protected speech, similar to the splash screen the Ninth

Circuit found problematic in *Trafficschool.com*. The proposed injunction would also unfairly impair Defendants' ability to optimize their search engine results.

Third, the Court will not order Defendants to relinquish all domain names with other city names. At trial, Plaintiffs did not focus on domain names as a means of false advertising. There are also entirely lawful reasons for Defendants to own domain names with other city names. Defendants may want to reserve a particular domain name, for instance, in the event Defendants decide to expand their operations to other cities. This requested relief is overbroad and goes beyond the scope of the false advertising at issue in the trial.

Fourth, the Court will not restrict Defendants' ability to purchase certain types of advertising. Plaintiffs seek to bar Defendants from purchasing the names of geographic locations other than Newport Beach on pay-per-click advertising systems like Google AdWords. Plaintiffs contend that Defendants' "aggressive purchase of geographical terms as AdWords" has "block[ed] out other operators." (Dkt. 310 [Pls.' Reply] at 21.) But there is nothing wrong with Defendants seeking to advertise their whale watching cruises in other cities in Southern California, so long as consumers understand the cruises depart from Newport Beach. There is also nothing wrong with the fact that Defendants invest heavily in pay-per-click advertising systems and outbid other operators for advertising space. Plaintiffs admit, in fact, that the purchase of AdWords of any sort is ordinarily lawful. (*Id.*) Plaintiffs' proposed injunction is overbroad because it seeks to bar Defendants' from *any* use of other geographic terms, rather than the *misleading* use of geographic terms.

Fifth, the Court is concerned about the administrability and feasibility of an injunction that attempts to enjoin what appears in organic Google search results or third-party websites like Groupon. Plaintiffs offer no evidence as to how much control

Defendants have over these sites, and the Court does not wish to harpoon Defendants over content they cannot control. Accordingly, the Court declines to adopt the language of Plaintiffs' proposed injunction to the extent it holds Defendants responsible for content created by third parties.

In sum, Plaintiffs' motion for a permanent injunction is **GRANTED IN PART**. Plaintiffs are entitled to an injunction. The injunction proposed by Plaintiffs, however, is overbroad. The Court will instead issue an injunction that focuses on the kind of advertising that was at issue at trial. If Defendants repeat the name of a city other than Newport Beach in an advertisement or on a webpage, they will be required to clearly disclose that their cruises depart from Newport Beach on that advertisement or webpage. In addition, Defendants must advertise a price for a ticket that is the entire final cost of the ticket, excluding any legally collected sales tax or any optional, add-on services or goods.

**V. ATTORNEYS' FEES**

Plaintiffs seek $1,515,679 in attorneys' fees. (Dkt. 278.) Under the Lanham Act, a court "in exceptional cases may award reasonable attorney fees to the prevailing party."[3] 15 U.S.C. § 1117(a). According to the Supreme Court, an "exceptional" case "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). "District courts may determine

---

[3] Defendants argue Plaintiffs are not the prevailing party because the jury failed to award them any damages. In order to be a prevailing party, the party must have "achieved a material alteration in the legal relationship of the parties that is judicially sanctioned." *Fifty-Six Hope Rd.*, 778 F.3d at 1078 (quoting *Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.*, 589 F.3d 1027, 1030 (9th Cir. 2009)). As discussed above, Plaintiffs are entitled to injunctive relief, so Plaintiffs are the prevailing party.

whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* A "nonexclusive" list of factors to consider in making this determination includes "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016) (quoting *Octane Fitness*, 572 U.S. at 554 n.6).

This is not an exceptional case. Plaintiffs' case does not stand out from others with respect to its substantive strength. As discussed above, Plaintiffs failed to prove that Defendants' false advertising was willful. Plaintiffs' lack of proof of damages also proved to be a fundamental problem. In the end, Plaintiffs' attorneys expended over 3,300 hours on this case without recovering any damages for their client. Although the injunction confers some public benefit, stopping misleading advertising about whale watching does not ameliorate a serious public harm. *Cf. TrafficSchool.com*, 653 F.3d at 832 (remanding for district court to consider, in determining attorneys' fees, the substantial benefits gained through an injunction where plaintiffs stopped consumers from mistakenly transferring sensitive personal information to a commercial website called DMV.org). The fact that Plaintiffs have spent eight years litigating related issues, both in state and federal court, does not make this an exceptional case. If anything, it undermines Plaintiffs' claim of exceptionality, as the litigation has achieved mixed results. Nor did Defendants unreasonably litigate his case. A vigorous defense is not unreasonable. Defendants likely had a good faith belief that Plaintiffs could not prove they suffered damages, a belief ultimately substantiated by the jury's verdict. Plaintiffs' motion for attorneys' fees is **DENIED**.

//

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs' motions for disgorgement of profits and for attorneys' fees are **DENIED**. Plaintiffs' motion for a permanent injunction is **GRANTED IN PART**. Pursuant to this order, the Court will issue a judgment and permanent injunction forthwith.

DATED: August 26, 2019

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE