**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

|  |  |
|---|---|
| HARBOR BREEZE CORPORATION, et al.,<br><br>       Plaintiffs,<br><br>   v.<br><br>NEWPORT LANDING SPORTFISHING, INC., et al.,<br><br>       Defendants. | Case No.: SACV 17-01613-CJC(DFMx)<br><br><br>**ORDER DENYING PLAINTIFFS' MOTIONS FOR CONTEMPT [Dkt. 330] AND FOR SANCTIONS [Dkt. 347]** |

## I.  INTRODUCTION

Plaintiffs Harbor Breeze Corporation and L.A. Waterfront Cruises, LLC brought this false advertising lawsuit against Defendants Newport Landing Sportfishing, Inc., Daveys Locker Sportfishing, Inc., Ocean Explorer, Inc., and Freelance Sportfishing, Inc.

(Dkt. 1 [Complaint].)  The case proceeded to trial before a jury in June 2019.  After five days of trial, the jury returned a verdict finding Defendants had engaged in false advertising in violation of the Lanham Act with respect to the location from which its whale watching cruises departed and the pricing for those cruises that Defendants charged their customers.  Accordingly, on August 26, 2019, the Court issued a permanent injunction which enjoined Defendants from engaging in certain advertising practices regarding those two issues.  (Dkt. 314 [Judgment and Permanent Injunction, hereinafter "Inj."].)  Before the Court are two motions.  The first is Plaintiffs' motion for contempt, which alleges that Defendants have failed to bring many of their online advertisements into compliance with the terms of the Injunction.  (Dkt. 330 [hereinafter "Contempt Mot."].)  The second is Plaintiffs' motion for sanctions, which argues that Defendants and their counsel should be sanctioned for statements made in their opposition to the motion for contempt.  (Dkt. 347 [hereinafter "Sanctions Mot."].)  For the following reasons, both motions are **DENIED**.[1]

## II. BACKGROUND

This case concerns online advertising in the Southern California whale watching industry.  Plaintiffs and Defendants are competitors in this industry.  Both offer whale watching cruises for locals and tourists in Southern California.  Plaintiffs operate in Long Beach and San Pedro in Los Angeles County, and Defendants operate in Newport Beach in Orange County.  In September 2017, Plaintiffs filed this lawsuit in federal court, asserting claims for (1) false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a), (2) violation of California Business and Professions Code §§ 17200 *et seq.*, and

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for January 27, 2020, at 1:30 p.m. is hereby vacated and off calendar.

(3) violation of California Business and Professions Code §§ 17500 *et seq.*  The case proceeded to trial before a jury in June 2019.

At trial, Plaintiffs primarily focused on two aspects of Defendants' advertising.  First, Plaintiffs contended that Defendants engaged in false advertising with respect to their location.  For instance, if a consumer searched on the internet for "Long Beach whale watching," the consumer would be directed to a page on Defendants' website, which made repeated use of the phrase "Long Beach residents and visitors," suggesting that Defendants' cruises depart from Long Beach, not Newport Beach.  (*See* Dkt. 292 [Day 1 Vol. III Transcript] at 74:14–75:8.)  Second, Plaintiffs asserted that Defendants engaged in false advertising with respect to their pricing.  Defendants advertised, for example, a "$10 whale watching special."  (*Id.* at 75:19–76:5.)  A consumer, however, could never board Defendants' cruises for just ten dollars.  In addition to that $10 price, Defendants also charged a $2.50 fuel surcharge and a two-percent wharfage fee.  (*See id.* at 76:6–77:22.)  There was also evidence that calling these extra charges a "fuel surcharge" or "wharfage fee" was misleading because these fees were a way to extract extra revenue, not tied to actual expenses, and Defendants did not disclose them until late in the booking process.  (*See* Dkt. 294 [Day 3 Vol. I Transcript] at 123:6–128:4.)

After five days of trial, the jury reached a verdict.  It found that Plaintiffs had proven all elements necessary to find that the Defendants had engaged in false advertising in violation of the Lanham Act.  (Dkt. 271.)  On the question of damages, however, the jury awarded $0 for Plaintiffs' actual damages and $0 for Defendants' profits attributable to the false advertising.  (*Id.*)

Following the verdict, Plaintiffs moved the Court for a permanent injunction which would prohibit Defendants from advertising their services in a number of ways.  On August 26, 2019, the Court granted Plaintiffs' motion in part after considerably

narrowing sections of Plaintiffs' proposed injunction that it determined were overboard. (Dkt. 314 [Judgment and Permanent Injunction, hereinafter "Inj."].)  The permanent injunction provides in full:

1.  Defendants may not falsely or deceptively represent in their advertising that they operate out of any city other than Newport Beach, specifically:

   a.  If Defendants use more than once the name of a city other than Newport Beach in a printed or online advertisement or on a webpage owned or operated by Defendants, Defendants shall clearly state at the top of the page/content, in a banner of at least the same type appearing on the page or screen and at least one-quarter inch high and of a single color, size and typeface (and clearly readable against any background behind the text), that "All of Cruises Depart from Newport Beach."

   b.  Defendants may freely use variations of Newport, Newport Beach, Newport Harbor, Newport Landing, Orange County, and Southern California, without triggering the disclosure requirements in Paragraph 1a.

   c.  "A city other than Newport Beach" includes any city in any state in the United States and is not limited to Long Beach, San Pedro, Los Angeles, Santa Monica, Malibu, Redondo, Marina del Rey, Manhattan Beach, Venice Beach, Huntington Beach, Dana Point, San Diego, Santa Barbara, or Palm Springs.

2.  Defendants may not falsely or deceptively represent the cost of their tickets, specifically:

   a.  In any printed or online advertisement or webpage owned or operated by Defendants stating a price for a ticket, the price stated shall be the entire final cost of the ticket exclusive only of any legally collected sales tax, and of any optional, add-on services or goods (such as for food, drinks, the use of binoculars or fishing gear, etc.) that may be chosen or rejected at the purchaser's sole discretion.  (The costs of such additional, optional, add-on services or goods need not be disclosed in the advertisement.)

   b.  In any printed or online advertisement or webpage owned or operated by Defendants stating a price for a ticket, to the extent that the ticket

price may be for a particular day, time, or category of passenger (i.e., child or senior), the advertisement or website shall clearly disclose the price is applicable only for that date, time, or category of passenger.

c.     In any offering by Defendants on Groupon, Living Social, Viator, or any similar third-party site on which users purchase vouchers or a similar device entitling users to later exchange the voucher or other device for a ticket or reservation on one of Defendants' cruises, Defendants may not charge any additional amounts in order to redeem the voucher or other device for a reservation or ticket other than for optional, add-on services or goods (such as for food, drinks, the use of binoculars or fishing gear, etc.) that may be chosen or rejected at the purchaser's sole discretion.  This does not include any fees charged by Groupon, Living Social, Viator, or a similar third-party site.

d.     To the extent that the voucher or similar device may be used only for a particular day, time, or category of passenger (i.e., child or senior), Defendants may charge a supplement to redeem the voucher or other device for a different date, time, or category of passenger, provided that the exact additional charges for such other dates, times, or categories of passenger are clearly disclosed in the text of the offering.

(Inj. at 2–4.)

When crafting the Injunction, the Court was primarily concerned with proscribing Defendants from employing advertising techniques that have a tendency to mislead consumers.  At the same time, it was weary of including language that would unduly constrain Defendants' ability to advertise in non-misleading ways and unnecessarily entangle the Court with Defendants' business.  In light of these goals, the Injunction sought to address and remedy the two advertising techniques that were central to Plaintiffs' case at trial: (1) Defendants misrepresenting the fact that all of their whale watching cruises depart from Newport Beach, (*see, e.g.*, Dkt. 280-11 [Trial Exhibit 1204]), and (2) Defendants listing prices that did not include additional mandatory charges like "wharfage fees" and "fuel surcharges" that would apply each time a ticket was purchased, (*see, e.g.*, Dkt. 280-3 [Trial Exhibit 1046]).

Soon after the Court issued the injunction, the parties agreed that Defendants would have until September 30, 2019 to bring their online advertisements into compliance with it.  (Dkt. 331 [Declaration of Joshua S. Hodas, hereinafter "Hodas Decl."] Ex. B.)  On October 11, 2019, Plaintiffs' counsel sent a letter to Defendants' counsel which identified several online advertisements that allegedly remained noncompliant.  (*Id.* Ex. C.)  A lengthy back-and-forth ensued, but the parties were unable to reach an agreement on their own.  Plaintiffs eventually filed their motion for contempt, which argues that several of Defendants' online advertisements violate the terms of the Court's Injunction.  (Contempt Mot.)  Defendants opposed the motion.  (Dkt. 334 [hereinafter "Opp'n"].)  Soon thereafter, Plaintiffs filed their motion for sanctions, which contends that some statements made in Defendants' opposition to the motion for sanction were false and made without a reasonable inquiry into the circumstances.  (Sanctions Mot.)

## III.  MOTION FOR CONTEMPT

### A.  Legal Standard

A district court has the inherent authority to enforce compliance with its orders through a civil contempt proceeding, *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827–28 (1994), and broad equitable power to order appropriate relief, *FTC v. EDebitPay, LLC*, 695 F.3d 938, 945 (9th Cir. 2012).  "Civil contempt . . . consists of a party's disobedience of a specific and definite court order by failure to take all reasonable steps within the party's power to comply."  *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993).  The violation "need not be willful . . ."  *Id.* (internal quotation marks and citation omitted).

To establish that Defendants should be held in civil contempt, Plaintiffs first must demonstrate by clear and convincing evidence that they violated a court order "beyond substantial compliance, and that the violation was not based on a good faith and reasonable interpretation of the [order]." *Wolfard Glassblowing Co. v. Vanbragt*, 118 F.3d 1320, 1322 (9th Cir. 1997). If Plaintiffs meet this initial burden, the burden then shifts to Defendants to demonstrate that they "took every reasonable step to comply." *Stone v. City & County of San Francisco*, 968 F.2d 850, 856 n. 9 (9th Cir. 1992). Thus, to hold Defendants in civil contempt, the Court must "determine (1) that [they] violated [a] court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence." *Dual-Deck*, 10 F.3d at 695.

## B. Discussion

Plaintiffs contend that Defendants should be held in contempt because, as of the date of their motion, several of Defendants' online advertisements were in violation of the Injunction. The Court will address each alleged violation in turn.

### 1. The Mobile Site

Plaintiffs first contend that the mobile version of the Long Beach section of Defendants' website was in violation of both ¶¶ 1(a) and 2(b) of the Injunction. The first relevant section of the Injunction provides that, "[i]f Defendants use more than once the name of a city other than Newport Beach in a printed or online advertisement . . . Defendants shall clearly state at the top of the page . . . that 'All Cruises Depart from Newport Beach.'" (Inj. ¶ 1(a).) The second relevant section provides that, "in any printed or online advertisement or webpage . . . stating a price for a ticket, to the extent that the ticket price may be for a particular day, time, or category of passenger (i.e., child

or senior), the advertisement or website shall clearly disclose the price is applicable only for that date, time, or category of passenger."  (*Id.* ¶ 2(b).)

Plaintiffs submit screenshots alongside their motion to contempt indicating that the Long Beach section of Defendants' mobile site did not comply with either section of the Injunction as of November 6, 2019.  (Hodas Decl. Ex. F.)  Although the webpage used the name of another city, it did not contain the required banner clarifying that "All Cruises Depart from Newport Beach."  (Inj. ¶ 1(a).)  And although the advertised $16 price was subject to change at peak-times, those supplemental charges were not disclosed.  (*Id.* ¶ 2(b).)  When Plaintiffs filed their reply brief, they submitted more evidence—this time, a video clip of Plaintiffs' counsel scrolling through the relevant web page on his mobile phone—which showed that the page in question still did not contain these required disclosures.  (Dkt. 338 [Reply Declaration of Mark Hodas, hereinafter "Hodas Rep. Decl."] Ex. A.)  Instead, the following image still appeared on its own and unaccompanied by the required disclosures:

---

**$16 WHALEWATCHING SPECIAL**

CLICK HERE TO CLAIM OFFER

BUY TICKETS ONLINE

---

(Hodas Decl. Ex. F.)

Defendants originally contended that Plaintiffs were relying on an outdated screenshot and that the mobile version of the Long Beach section of the website had been

updated.  (Opp'n at 8.)  They have since retracted that contention, (Dkt. 343), and admit that the website was noncompliant for a period of time due to a technical error, (Dkt. 349-1 [Declaration of Denisha McKenzie, hereinafter "McKenzie Decl."] Ex. A). Specifically, for a period of time, one errant line of code prevented the banner containing the price and location disclosures from displaying on small-screen mobile devices.  (Dkt. 354-1 [Sur-Reply Declaration of Thor Brisbin] ¶ 12.)  However, the webpage in question was updated on November 27, 2019 and now contains the required disclosures.  (Dkt. 348 [Declaration of Joshua S. Hodas in support of Plaintiffs' Motion for Sanctions] ¶ 3.)

## 2.   The Sportfishing Ads

The next alleged violation that Plaintiffs raise concerns the Sportfishing section of Defendants' website.  Plaintiffs submit that this section of Defendants' website contains the following charts which are in violation of ¶ 2(b) of the Injunction:

| TRIP TYPE | PRICE |
|---|---|
| Standard Adult (Ticket Only) | $45.50 |
| Standard Junior or Senior (Ticket Only) | $38.00 |
| Limited Load – All Ages (Ticket Only) | $69.00 |
| Add On Rod Rental & Tackle Pack To Any Ticket | $24.50 |
| Add On a One Day Fishing License To Any Ticket | $16.20 |
| Fishing License Required for Ages 16+ | |

(Hodas Decl. Ex. G at 3–4.)

Paragraph 2(b) of the injunction provides that when Defendants' website states a ticket price, "to the extent that ticket price may be for a particular day, time, or category of passenger . . . [the] website shall clearly disclose the price is applicable only for that date, time, or category of passenger."  Plaintiffs contend that the above chart violates this section, because the listed prices for  "standard adult" and "standard junior or senior" only apply on weekdays.  According to Plaintiffs, the cost of a standard adult ticket jumps to $69 on the weekends.  (Hodas Decl. ¶ 12.)

Plaintiffs have failed to prove by clear and convincing evidence that this weekend price-hike actually exists.  Plaintiffs' counsel submits that on November 5, 2019, he "engaged in the first steps of booking a ticket" and "determined that any attempt to book an adult ticket for a Saturday resulted in the price changing to $69, as seen below in an image collected by me." (*Id.*)  However, the image Plaintiffs' counsel attached showing the $69 figure also shows that he selected a "limited load departure time," which—consistent with Defendants' pricing chart—costs $69.  (*Id.*)  Accordingly, Plaintiffs have not submitted clear and convincing evidence to substantiate their claim that Defendants violated the injunction by failing to disclose that the listed $45.50 price only applies on weekdays.  Indeed, there is no evidence before the Court indicating that a "standard

departure" ticket—as opposed to a "limited load departure time" ticket—costs more than $45.50 on the weekends.

Plaintiffs next direct the Court to another portion of Defendants' sportfishing website which they allege also violates ¶ 2(b) of the Injunction.  That section is depicted below:

(Hodas Decl. ¶ 14.)  Specifically, Plaintiffs take issue with the fact that the "from USD $61.00" language is not accompanied by a disclosure that this price applies only for children and on weekdays.  (Contempt Mot. at 12–13.)  According to Plaintiffs, adult tickets for the advertised trip cost $71 on weekdays and $86 on weekends.  (Hodas Decl. ¶ 14.)

The Court is unwilling to interpret its own Injunction to proscribe Defendants from advertising that prices start at or are "from" a listed price.  This advertising technique was not at issue at trial and is unlikely to mislead consumers.  Defendants' inclusion of the word "from" clearly discloses that the quoted $61 figure is not universally available and may increase depending on time of day or class of passenger.  This is a commonly used practice that consumers are familiar with and can readily understand.  The use of "from"

in front of a listed price is sufficient to meet the Injunction's requirement that Defendants "clearly disclose" that the price is applicable only at certain times and for certain classes of passengers.  (Inj. ¶ 2(b).)  The sportfishing advertisements cited by Plaintiffs do not violate ¶ 2(b) of the Injunction.

### 3.   The Supplemental Charges

Plaintiffs next take issue with the way Defendants disclose the supplemental charges which apply to cruises departing at peak-times.  At the center of this dispute is the following banner which appears in several locations across Defendants' webpages:



(Hodas Decl. Ex. I.)  Plaintiffs contend that these banners violate ¶ 2(a) of the Injunction, which provides that "[i]n any printed or online advertisement or webpage owned or operated by Defendants stating a price for a ticket, the price stated shall be the entire cost of the ticket."  According to Plaintiffs, these advertisements violate the injunction because Defendants do not explicitly disclose that the price of the cruise will be $13.50 or $17.50 if taken at a peak time.

The Court disagrees.  The advertisements in question are easily understandable and clearly state the final price of the ticket.  If taken on a weekday, the cruise will cost $10 if taken during an off-peak time and $13.50 if taken during a peak time.  Unlike the undisclosed wharfage and fuel charges at issue during trial, the supplemental charges at issue here appear in clear print on the face of the advertisement and are unlikely to mislead consumers regarding the price of the ticket.  Nothing in the injunction prevents Defendants from charging different prices for different times of the day.  It only compels them to clearly state the final price so as not to "falsely or deceptively represent the cost of their tickets."  (Inj. ¶ 2.)  The advertisements prominently disclose the supplemental charge alongside the base price and therefore fully comply with the Injunction.

### 4.   The Group-on Advertisements

Plaintiffs next allege that Defendants have failed to bring their Groupon advertisements into compliance with ¶ 2(d) of the Injunction.  Paragraph 2(d) allows Defendants to "charge a supplement to redeem [a] voucher or other device for a different date, time, or category of passenger provided that the exact additional charges . . . are clearly disclosed."  Plaintiffs contend that Defendants' Groupon offerings do not clearly disclose that the $3.50 supplement applies at peak-times because the supplemental price is disclosed in the "what you'll get" section of the offering.  This section is depicted below:

(Hodas Decl. Ex. L.)  Though the "what you'll get" section is well-marked and the disclosure regarding the peak-time supplements is clear, customers are not required to scroll past it before clicking "buy" and moving to the purchasing screen.  Thus, Plaintiffs are arguably correct that a Groupon consumer could move to the purchasing screen without ever viewing Defendants' disclosure of the supplemental fees.

That said, the Court remains unconvinced that Plaintiffs have met their burden of providing clear and convincing evidence that these Groupon pages violate the injunction. Defendants correctly note that the Injunction does not specify where in the offering the disclosure must appear.  (Opp'n at 11.)  It only requires that supplemental charges be clearly disclosed.  Given that the Injunction does not elaborate on what it means to "clearly disclose" supplemental charges, interpreting it to permit the type of disclosure that Defendants employ here is not unreasonable.  *See Forever 21, Inc. v. Ultimate Offprice, Inc.*, 2013 WL 4718366, at *2 (C.D. Cal. Sept. 3, 2013) ("A party should not be found in contempt if the violation is based on a good-faith and reasonable interpretation of the Court's order."); *see also Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 889 (9th Cir. 1982) (affirming a district court's denial of a motion for contempt after finding that the 'wherever possible and practical' language of the original consent agreement was ambiguous and that defendants' interpretation of it was not unreasonable). Defendants' disclosure language clearly provides that "a supplement charge of $3.50 per

person applies only for cruise times Mon.–Fri, 10 a.m.–2:30 p.m. and Sat.–Sun. 9:30 a.m.–2:30 p.m."  (Hodas Decl. Ex. L.)  And while the disclosure appears below the "buy" button, it is not buried so deeply in fine print that a consumer is unlikely to ever see it. The Courts finds that Defendants' interpretation of the Injunction—which permits the structure of their Groupon advertisements—is reasonable.

### 5.   The Google Pay-per-click Advertisements

The next alleged violation of the Injunction concerns Defendants' pay-per-click Google advertisements.  An example of one such advertisement is depicted below:



(Hodas Decl. Ex. N.)  Plaintiffs' objection to these advertisements—that they fail to comply with ¶ 2(d) because they do not disclose that the $45.50 figure applies only at certain times and for certain categories of people—is identical to the one that Court previously found to be unpersuasive in the sportfishing section.

Again, because Defendants qualify the initial $45.50 offer with the word "from," these advertisements clearly disclose that the $45.50 price will not be available in all instances.  The overarching purpose of the Court's Injunction was to prevent future customers from being misled by Defendants' advertisements.  (*See* Inj. at ¶ 2 ["Defendants may not falsely or deceptively represent the cost of their tickets"].)  And

these particular pay-per-click advertisements—which clearly disclose that the listed price will not apply in all instances—do not falsely or deceptively represent the cost of the tickets and are unlikely to mislead anyone.  The Court will not interpret its own injunction to proscribe such innocuous and non-misleading advertising.[2]

### 6.   The Meta-Tags

Finally, Plaintiffs claim that Defendants' use of meta-tags violates the Injunction's mandate that Defendants not "falsely or deceptively represent the cost of their tickets." (Inj. ¶ 2.)  Plaintiffs previously requested that the Court police Defendants' use of meta-tags its motion for a permanent injunction.  (Dkt. 277.)  The Court declined to do so after determining that regulating Defendants' use of meta-tags would "significantly burden commercial speech" and "unfairly impair Defendants' ability to optimize their search engine results."  (Dkt. 313 at 10–11.)   The Court remains unwilling to become overly entangled in Defendants' business and—in light of its past statements regarding Defendants' meta-tags—cannot find that Defendants' use of meta-tags violates any provision of the Injunction.

### 7.   Conclusion

After analyzing each alleged violation raised in Plaintiffs' motion, the Court finds that Plaintiffs have not met their burden in establishing by clear and convincing evidence that Defendants have violated the Injunction beyond substantial compliance.  "Substantial

---

[2] Serious practical difficulties arise from interpreting the Injunction in the way Plaintiffs suggest.  Doing so forces Defendants to disclose each and every pricing permutation they offer in their three-line, pay-per-click advertisements.  As shown above, these advertisements contain extremely limited space for text.  It would be impossible for Defendants to disclose much more than they already do.  Defendants' inclusion of the word "from" in front of the listed price satisfies the injunction by making these advertisements not misleading.

compliance with the court order is a defense to civil contempt, and is not vitiated by a few technical violations where every reasonable effort has been made to comply." *See Dual-Deck*, 10 F.3d at 695 (internal quotations omitted).  The only violation that Plaintiffs were able to demonstrate by clear and convincing evidence involves the mobile version of one page of Defendants' website.  However, Defendants have submitted evidence demonstrating that a technical glitch—specifically one single errant line of code—was to blame for the required updates not appearing on the mobile site.  (Brisbin Sur-Reply Decl. ¶ 12.)  The glitch has since been cured and the page in question now complies with the Injunction.  (*Id.*)

The Court will not hold Defendants in contempt for this inadvertent and isolated violation.  A "few technical violations cannot defeat [Defendants'] substantial compliance with the injunction."  *Derek & Constance Lee Corp. v. Kim Seng Co.*, 2010 WL 11508468, at *6 (C.D. Cal. Apr. 5, 2010) (citing *Dual-Deck*, and finding that although the defendant "does admit to some technical violations, but those alone do not support contempt sanctions"); *Newmark Realty Capital, Inc. v. BGC Partners, Inc.*, 2018 WL 2416242, at *9 (N.D. Cal. May 29, 2018) (finding that even there were instances in which defendant's website violated an injunction, "such instances of non-compliance are technical violations that do not support a finding of civil contempt").  And the fact that Defendants allowed one particular version of one webpage to slip through the cracks does not rise to the level of civil contempt.  *Compare Vertex*, 689 F.2d at 892 (affirming the district court's denial of a motion for contempt when the plaintiff "introduced evidence of only one violation") *with S. Cal. Darts Assoc. v. S. Cal. Darts Assoc., Inc.*, 2012 WL 12882764, at *2 (C.D. Cal. June 22, 2012) (granting plaintiff's motion for contempt when defendants failed to take down their infringing website altogether).

This isolated lapse must also be viewed in the context of Defendants' overall efforts to comply with the injunction.  *See Vertex*, 689 F.2d at 892.  By all accounts,

Defendants have gone to considerable lengths to revamp their online advertising.  (*See generally* Brisbin Sur-Reply Decl.)  This work began soon after the Injunction was issued on August 26, 2019.  (*Id.*)  Defendants' Marketing Director affirmed that he and his advertising team have spent over 600 hours over the last three months to bring their webpages into compliance with the Injunction.  (Dkt. 334-5 [Declaration of Thor Brisbin, hereinafter "Brisbin Decl."] ¶ 4.)  During these efforts, Defendants prioritized eliminating the aspects of their online presence that Plaintiffs focused on at trial—namely making clear that all of their cruises depart from Newport Beach and removing undisclosed fuel and wharfage charges.  (*Id.* ¶ 6.)  As a result of these substantial efforts, Defendants have succeeded in bringing their online advertising into substantial compliance with the Injunction.[3]

## IV.  MOTION FOR SANCTIONS

Next before the Court is Plaintiffs' motion for sanctions.  This motion contends that certain statements contained in Defendants' opposition to the motion for contempt were false and made without a reasonable investigation into the facts.

### A.  Legal Standard

Rule 11(b) of the Federal Rules of Civil Procedure imposes a duty upon those who sign pleadings to certify that the pleading or motion is "it is not being presented for any improper purpose," that the "legal contentions are warranted by existing law," and that "the factual contentions have evidentiary support."  Fed. R. Civ. P. 11(b).  "The central

---

[3] In their reply brief and accompanying declaration, Plaintiffs allege an additional violation regarding fuel surcharges.  (Dkt. 337 at 16–18.)  Courts typically decline to address arguments raised for the first time in reply briefing.  *See, e.g.*, *FT Travel--New York, LLC v. Your Travel Ctr., Inc.*, 112 F. Supp. 3d 1063, 1079 (C.D. Cal. 2015) (collecting cases).  In fairness to Defendants, the Court declines to do so here.

purpose of Rule 11 is to deter baseless filings in district court and thus . . . streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). Rule 11 requires litigants and their counsel to undertake a reasonable investigation of the facts and evidence available in light of the circumstances prior to filing. *See Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002). Thus, attorneys are subject to sanctions under Rule 11 when they present "factual contentions [that] have [no] evidentiary support or . . . will [not] likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]" Fed. R. Civ. P. 11(b)(3).

The decision to impose sanctions is within the sound discretion of the district court. *See Christian*, 286 F.3d at 1126–27. Rule 11 sanctions are "an extraordinary remedy, one to be exercised with extreme caution." *Operating Eng'rs Pension Tr. v. A–C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988). Sanctions are reserved for "the rare and exceptional case where the action is clearly frivolous." *Id.* at 1344. That standard is met when attorneys file "a pleading or other paper which no competent attorney could believe was well grounded in fact." *Greenberg v. Sala*, 822 F.2d 882, 885 (9th Cir. 1987).

Rule 11 also contains a safe harbor provision. *See* Fed. R. Civ. P. 11(c)(2). Under it, "Rule 11 sanctions may not be imposed if the challenged claim is withdrawn within 21 days after service of the sanctions motion." *Sneller v. City of Bainbridge Island*, 606 F.3d 636, 639 (9th Cir. 2010) (citing Fed. R. Civ. P. 11(c)(2)). The purpose of this provision is to provide "protection against sanctions if [litigants] withdraw or correct contentions after a potential violation is called to their attention." *See* Fed. R. Civ. P. 11 Advisory Committee Notes.

//
//

**B.  Discussion**

Plaintiffs contend that Defendants and their counsel violated Rule 11 and should be sanctioned because certain statements in their opposition to Plaintiffs' motion for contempt were made without evidentiary support and without a reasonable inquiry under the circumstances.  Specifically, Plaintiffs take issue with the opposition's assertions that the motion for contempt relied on "partial screenshots of advertisements," and screenshots of "clearly outdated versions of already-updated websites."  (Opp'n at 2.) According to Plaintiffs, these statements are sanctionable because, had Defendants conducted a reasonable inquiry, they would have known that the screenshots were not outdated and in fact, Plaintiffs' counsel had collected them within two days of filing the motion for contempt.

Though Plaintiffs direct the Court to several instances where the opposition characterizes screenshots as "outdated" or "incomplete," their motion for sanctions primarily focuses on one particular instance regarding the mobile version of Defendants' website.  Indeed, nearly the entire body of Plaintiffs' motion is dedicated to the allegation that Defendants' opposition accused Plaintiffs of using "an out-of date screenshot" of their mobile site.  (*See* Sanctions Mot. at 4–9.)  It is unclear why Plaintiffs base so much of their motion on this specific allegation, because by the time Plaintiffs filed their motion for sanctions, Defendants had already retracted the statement in question.  (*See* Dkt. 343 [Notice of Errata].)  Indeed, on December 26, 2019, Defendants filed a notice of errata stating: "Defendants would like to clarify for the Court that section II.(D)(1) of Defendants' brief should be corrected to reflect that Plaintiffs' reference to one copy of the mobile $16 Whale Watching Special website was not an 'out of date screenshot.'" (*Id.*)  This notice—filed four days *before* Plaintiffs filed the motion for sanctions and within Rule 11's 21-day safe harbor period—appropriately corrects the primary Rule 11 violation alleged in Plaintiffs' motion for sanctions.  Fed. R. Civ. P. 11(c)(2).

Accordingly, Plaintiffs' motion for sanctions cannot be premised on this particular

statement.  *See Sneller*, 606 F.3d at 639.

After being stripped of this central allegation, Plaintiffs' motion for sanctions is

premised on several other instances where Defendants' opposition makes reference to

"outdated" or "incomplete" screenshots.  For example, in one instance, Defendants

accuse Plaintiffs of "using the screenshots of outdated advertising to create a false

narrative."  (Opp'n at 2.)  In another, they state that "[a]gain, Plaintiffs rely on outdated

and selective advertisements."  (*Id.* at 12.)  Plaintiffs have sufficiently demonstrated that

these references to outdated screenshots were misleading because each screenshot was

taken within two days of Plaintiffs' motion for contempt.  (*See generally* Hodas Decl.)

That said, the Court finds that these remaining statements do not warrant the imposition

of sanctions.

"The court has significant discretion in determining what sanctions, if any, should

be imposed for a violation."  Fed. R. Civ. P. 11 Advisory Committee Notes.  "Rule 11

sanctions do not extend to isolated factual errors, committed in good faith, so long as the

pleading as a whole remains well grounded in fact."  *See Kiobel v. Millson*, 592 F.3d 78,

83 (2d Cir. 2010) (internal quotations omitted); *see also Cooter & Gell*, 496 U.S. at 393

("The central purpose of Rule 11 is to deter baseless *filings*) (emphasis added).  Here,

Plaintiffs do not contend that Defendants' opposition is sanctionable in its entirety—

instead, they only take issue with several isolated phrases.  These phrases alone, while

factually inaccurate, are insufficient to warrant the imposition of sanctions.  *See Art

Attacks Ink, LLC v. MGA Entm't, Inc.*, 2006 WL 8439887, at *8 (S.D. Cal. June 21,

2006) ("Rule 11 is not intended to be used against attorneys for minor violations").

Exercising the "extreme caution" it must while considering sanctions, *see Operating

Eng'rs*, 859 F.2d at 1345, the Court declines to impose Rule 11 sanctions on Defendants

based on a few errant phrases in their 20-page opposition, especially in light of the fact

that it never relied on these phrases in ruling on the motion, *see Jackson v. Capital Mgmt. Servs., LP*, 2014 WL 12597808, at *5 (C.D. Cal. July 21, 2014) (finding that sanctions were unwarranted when the Court did not rely on the evidence in question and therefore did not prejudice plaintiff).

## V.  CONCLUSION

For the foregoing reasons, Plaintiffs' motions for contempt and for sanctions are **DENIED**.

DATED:      January 23, 2020

_____

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE