JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

HARBOR BREEZE CORPORATION, et al.,

        Plaintiffs,

    v.

NEWPORT LANDING SPORTFISHING, INC., et al.,

        Defendants.

Case No.: SACV 17-01613-CJC (DFMx)

MEMORANDUM OF DECISION

I. INTRODUCTION

    Plaintiffs Harbor Breeze Corporation and L.A. Waterfront Cruises, LLC, brought this false advertising lawsuit against Defendants Newport Landing Sportfishing, Inc., Davey's Locker Sportfishing, Inc., Ocean Explorer, Inc., and Freelance Sportfishing, Inc.

1 (*See* Dkt. 1 [Complaint, hereinafter "Compl."].) The jury found that Plaintiffs had proven all elements of liability for false advertising but awarded $0 in damages and profits. (*See* Dkt. 271 [Verdict Form].) The Ninth Circuit reversed in part and vacated in part on disgorgement of profits and attorneys' fees, respectively, because a subsequent change in the law rendered incorrect the jury instruction that willfulness was a prerequisite to disgorge profits. (*See* Dkt. 369 [Opinion].) The Court held a bench trial on these two issues on remand. (*See* Dkt. 431 [Reporter's Transcript of Proceedings, Nov. 29, 2022, hereinafter "11/29/22 Tr."]; Dkt. 432 [Reporter's Transcript of Proceedings, Nov. 30, 2022, hereinafter "11/30/22 Tr."]). Upon consideration of the evidence, the Court declines to disgorge profits or to award fees.

## II. BACKGROUND

Plaintiffs and Defendants are competing businesses that operate whale-watching and other boat cruises off the coast of the Los Angeles metropolitan area. (*See* 11/29/22 Tr. 27:1–3, 30:15–23.) Plaintiffs operate out of Long Beach and San Pedro, California, while Defendants operate out of Newport Beach, California. (*See id.* 27:4–6, 27:22–28:2, 30:24–25.)

The parties' legal disputes began in 2011. Harbor Breeze brought state-law claims for unfair competition and false advertising in California state court against Newport Landing, Davey's Locker, and Thor Brisbin, who oversaw the companies' marketing. (*See* Dkt. 84 [Order Denying Defendants' Motion for Judgment on the Pleadings, hereinafter "Order MJP"] at 5 & n.2 [taking judicial notice of state court filings].) The operative complaint alleged a variety of unlawful actions, such as submitting a fake business address in Long Beach, creating misleading website URLs, and posting fake reviews about services. (*See id.* at 5.) The jury found that the defendants had engaged in false advertising, and the court enjoined them from specified conduct. (*See* Dkt. 433

[Defendants' Exhibits Admitted at 2019 Trial] at 103-1 to 103-4 [state court permanent injunction].)

Harbor Breeze requested that the state court hold the defendants in contempt, which the state court declined on January 2, 2015. (*See id.* at 102-4 [Notice of Ruling].) At issue were the defendants' representations about their location—namely, two advertisements referencing "Long Beach Departures" and the sufficiency of "a graphic stating 'All Vessels Depart from Beautiful Newport Beach' [on] each of [Newport Landing's] websites" that purportedly could not "be 'read' by third-party search engines." (*Id.*) The court found that the two advertisements were "inadvertent" and "subsequently removed" and that the graphic was adequate to comply with the injunction because it was "conspicuous to consumers viewing Newport Landing's website." (*Id.*)

In September 2017, Plaintiffs filed this action against Defendants. They asserted claims for (1) false advertising in violation of the Lanham Act, ch. 540, 60 Stat. 427 (1946) (codified as amended in scattered sections of 15 U.S.C.), (2) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200–17210, and (3) violation of California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500–17509. (*See* Compl.) The case proceeded to a jury trial in June 2019.

Plaintiffs' evidence focused on two aspects of Defendants' advertising. First, Plaintiffs contended that Defendants engaged in false advertising with respect to their location. For instance, a consumer who searched on the internet for "Long Beach whale watching" would be directed to a page on Defendants' website repeatedly stating the phrase "Long Beach residents and visitors," suggesting that their cruises departed from Long Beach rather than Newport Beach. (Dkt. 292 [Reporter's Transcript of Proceedings, June 18, 2019, Volume III, hereinafter "6/18/19 Tr. vol. III"] 74:14–75:8.) Second, Plaintiffs asserted that Defendants engaged in false advertising with respect to

their prices.  Defendants advertised, for example, a "$10 whale watching special" even though a consumer could never get on a whale watching cruise operated by Defendants for only $10.  (*Id.* at 75:19–76:5.)  Defendants charged a $2.50 fuel surcharge and a 2% wharfage fee on top of the $10.  (*See id.* 76:6–77:22.)  There was also evidence that calling these extra charges a "fuel surcharge" or "wharfage fee" was misleading because these fees were a way to get extra revenue, not tied to actual expenses, and Defendants did not disclose these fees until late in the purchase process.  (*See* Dkt. 294 [Reporter's Transcript of Proceedings, June 20, 2019, hereinafter "6/20/19 Tr."] 123:4–128:4.)

The jury found that Plaintiffs had proven all elements necessary to find that the Defendants had engaged in false advertising in violation of the Lanham Act.  (*See* Verdict Form.)  But the jury also awarded $0 for Plaintiffs' actual damages and $0 for Defendants' profits attributable to the false advertising.  (*Id.*)

After trial, the Court granted in part Plaintiffs' motion for a permanent injunction but denied their motions to disgorge Defendants' profits and to award attorneys' fees.  (*See* Dkt. 313 [Order Denying Plaintiffs' Motion for Order for Disgorgement of Profits, Granting in Part Plaintiffs' Motion for a Permanent Injunction, and Denying Plaintiffs' Motion for Attorneys' Fees].)  The Court noted that "Plaintiffs chose to submit the question of disgorgement of profits to the jury," so "the Court must give full effect to that verdict."  (*Id.* at 5.)  And there was "no reason to set aside the jury's verdict," as the jury could have reasonably found "that Defendants' false advertising was not willful" and "that Defendants' profits were not attributable to false advertising."  (*Id.* at 5–6.)  The Court also noted that if it "were to take its own view of the evidence, it would reach the same result."  (*Id.* at 6.)  For these (and other) reasons, the Court denied the motion for attorneys' fees as well.  (*See id.* at 13.)

While they appealed to the Ninth Circuit on disgorgement and fees, (*see* Dkt. 323 [Notice of Appeal]), Plaintiffs moved to hold Defendants in contempt for several purported violations of the injunction, (*see* Dkt. 357 [Order Denying Plaintiffs' Motions for Contempt and for Sanctions, hereinafter "Contempt Order"] at 2). The Court concluded that Defendants were not in contempt. (*See id.*) For example, Defendants' mobile site temporarily failed to include disclosures required by the injunction because of "a technical error"—"one errant line of code"—but "the webpage in question was updated . . . [to] contain[ ] the required disclosures." (*Id.* at 9.) Plaintiffs claimed that Defendants failed to disclose that certain ticket prices applied only on weekdays, but Plaintiffs "failed to prove by clear and convincing evidence that [a] weekend price-hike actually exists." (*Id.* at 10.) Plaintiffs also took issue with Defendants "advertising that prices start at or are 'from' a listed price," but "[t]he Court [wa]s unwilling to interpret its own Injunction to proscribe" as much. (*Id.* at 11.) And Plaintiffs claimed that Defendants did not properly state the "entire cost of the ticket" in their advertisements and webpages because Defendants stated the ticket price and charges in separate lines of text, which the Court found unpersuasive. (*Id.* at 12–15.)

Later, the Ninth Circuit reversed in part and vacated in part. (*See* Opinion.) The Ninth Circuit reversed on disgorgement because the jury instructions "failed to recite the correct legal standard." (*Id.* at 5.) It noted that this Court properly instructed the jury under "then-existing Ninth Circuit precedent . . . that, in order to be awarded Defendants' profits from their alleged false advertising, Plaintiffs had to show that Defendants acted willfully." (*Id.*) But the Supreme Court's decision in *Romag Fasteners, Inc. v. Fossil, Inc.*, 140 S. Ct. 1492 (2020), which postdated the trial and the order denying disgorgement, abrogated that precedent. (*See* Opinion at 5.) *Romag* "held that willfulness is not an 'inflexible precondition to recovery' . . . . Instead, a 'defendant's mental state is a highly important *consideration* in determining whether an award of profits is appropriate.'" (Opinion at 5 [quoting 140 S. Ct. at 1497].) The Ninth Circuit

then vacated on attorneys' fees "[b]ecause retrial of the disgorgement issue could affect the assessment of some of the relevant circumstances." (*Id.* at 12.)

The Court held a two-day bench trial on disgorgement and fees on remand. The parties designated witness testimony and exhibits from the 2019 trial as evidence and presented additional evidence that largely focused on Defendants' conduct since 2022. (*See* 11/29/22 Tr.; 11/30/22 Tr.) Plaintiffs' evidence suggested that Defendants continued to include locations like "Long Beach" in the title tags of some webpages, which appeared in organic search results on Google. (*See* 11/29/22 Tr. 234:1–12.) Defendants also included "supplemental charges," such as those purportedly for the decrease in passengers and higher fuel costs due to the COVID-19 pandemic for their regular whale-watching cruises. (*See, e.g.*, Dkt. 436-1 Ex. 2014 [MP4: Video of Davey's Locker Website (Oct. 5, 2022), hereinafter "Ex. 2014"].) And Defendants sold $10 Groupon vouchers that customers could redeem for cruises departing "Before 10am/After 5pm," although Defendants did not offer departures after 5 p.m., and for approximately one week offered vouchers that customers could redeem only when paying an additional $2 fee. (*Id.* Ex. 2003 [MP4: Video of Davey's Locker Groupon Webpage (Apr. 4, 2022), hereinafter "Ex. 2003"]; *id.* Ex. 2004 [MP4: Video of Groupon Voucher Redemption on Davey's Locker Website].) Further, Defendants used the phrase "Feel the Harbor Breezes" in a pay-per-click advertisement on Google. (Dkt. 436-1 Ex. 2025 [Google Search Results for "Harbor Breeze Whale Watching"] at 1.)

### III. DISCUSSION

#### A. Disgorgement of Profits

Section 35(a) of the Lanham Act provides for disgorgement of profits as a remedy to false advertising in violation of Section 43, "subject to the principles of equity." 15

U.S.C. § 1117(a).  Two reasons foreclose disgorging profits here—first, Defendants' profits are not attributable to their misconduct, and second, the equitable considerations, in the Court's discretion, do not weigh in favor of disgorgement.

### 1. Profits Attributable to False Advertising

"The Lanham Act allows a prevailing plaintiff to disgorge profits that are earned by the defendant and attributable to" false advertising.  *Globefill Inc. v. Elements Spirits, Inc.*, 756 F. App'x 764, 765 (9th Cir. 2019); *see also Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge*, 316 U.S. 203, 206 (1942) (holding that a plaintiff is not entitled to profits not attributable to the defendant's unlawful conduct); *U-Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1042 (9th Cir. 1986) ("The amount to be awarded is the financial benefit [the defendant] received because of the advertising.").  "[A] court may deny recovery of a defendant's profits if," for example "they are only remotely or speculatively attributable to the infringement." *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 517 (9th Cir. 1985).[1]  This principle—that misconduct must have "had an effect on profits" to justify disgorgement—is just plain "common sense." *Mackie v. Rieser*, 296 F.3d 909, 915 (9th Cir. 2002).  A plaintiff must "prove [a] defendant's sales only," while a "defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a).  Thus, the defendant has the burden of proving that misconduct "had no cash value in sales made by" the defendant.  *Mishawaka*, 316 U.S. at 207.

Evidence connecting Defendants' false advertising to their profits is lacking.  Plaintiffs say that "customers were confused between Defendants and Harbor Breeze, and at times Harbor Breeze allowed customers with Defendants' tickets on its boats."

---

[1] Though *Frank* dealt with the Copyright Act of 1976, Pub. L. No. 94-553, 90 Stat. 2541 (codified as amended in scattered sections of the U.S. Code), that statute's relevant provisions resemble those of the Lanham Act such that the same rule applies under the latter.  *See* J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30.65 (5th ed. Dec. 2022 Update).

(Dkt. 437 [Plaintiff's Post-Trial Brief, hereinafter "Pl. Br."]. at 32.) They argue that "[t]here is no question that Defendants profited extensively from their false and misleading advertising because Defendants' false fees came with a set dollar value." (*Id.* at 32.) But the Court is not convinced that Defendants would have earned less absent their misconduct. Defendants charged significantly lower prices for their cruises even including their fees. (*See* Dkt. 293 [Reporter's Transcript of Proceedings, June 19, 2019, Volume I] 116:6–117:12, 123:9–13.) And they ultimately disclosed all fees to consumers before any purchase was completed. (*See id.* 8:10–10:9, 12:4–13:7, 14:22–25.) It seems more likely than not that consumers would—and did—care more about getting a good deal than where the cruise departs or whether a few dollars get added to the ticket cost.

To be sure, Defendants may have "thought [that their] advertising was important or would generate profits," but that "is a truism. Companies obviously hope that advertising will be a boon to business. What [the evidence] failed to do," however, was persuade the Court "that the advertising actually had this effect." *Ill. Tool Works, Inc. v. Rust-Oleum Corp.*, 955 F.3d 512, 515 (5th Cir. 2020). In short, Defendants "would have sold just as many" tickets had their advertisements been up to snuff, and "there is no basis for inferring that any of the profits received by [Defendants] . . . are attributable to" their misconduct. *Tex. Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc.*, 951 F.2d 684, 696 (5th Cir. 1992).

### 2. Principles of Equity

The disgorgement remedy "'is not automatic' upon a finding of" false advertising. *Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1073 (9th Cir. 2015) (citation omitted). Rather, disgorgement is "subject to the principles of equity," 15 U.S.C. § 1117(a)—"fundamental rules that apply . . . systematically across claims and practice areas," *Romag*, 140 S. Ct. at 1496. These principles include (1) "a defendant's

mental state," *id.* at 1497, such as "whether the [defendant] had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting [the plaintiff's] rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off," *Kars 4 Kids Inc. v. America Can!*, 8 F.4th 209, 223 (3d Cir. 2021); *accord Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 175 (4th Cir. 2006); *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 349 (5th Cir. 2002). Courts have "discretion to fashion relief, including monetary relief, based on the totality of the circumstances." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1146 (9th Cir. 1997). Separate and apart from the problem of attributing Defendants' profits to their false advertising, the Court concludes in its discretion that the equities of this case do not favor disgorgement.

### a)    Mental State

Mental states fall along a spectrum. On one end is willfulness, which "carries a connotation of deliberate intent to deceive. Courts generally apply forceful labels such as 'deliberate,' 'false,' 'misleading,' or 'fraudulent' to conduct that meets this standard." *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1406 (9th Cir. 1993) (citations omitted), *superseded by statute on other grounds*, Trademark Amendments Act of 1999, Pub. L. No. 106-43, 113 Stat. 218, *as recognized in SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 839 F.3d 1179 (9th Cir. 2016) (en banc); *see also* McCarthy, *supra*, § 30.62 ("Courts have defined a 'willful' state of mind using a variety of descriptions, ranging from deliberate and knowing to reckless and indifferent."). Toward the other end of the spectrum is negligence, which is when a defendant "should have known of a . . . risk but, in fact, did not." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011). Willfulness is more culpable than negligence; the former generally supports disgorging ill-gotten gains, while the latter generally does not.

Defendants' mental state here does not favor disgorgement. They were at worst negligent, not willful. At the 2019 trial, Pam Watts, one of the individual owners of Defendants, testified that Defendants had made changes to their websites and advertisements following state court litigation in 2012 over false advertising and that Defendants afterwards thought they were in compliance. (*See* 6/20/19 Tr. 20:3–22.) One of those changes was to add language on every page that Defendants' boats departed from "beautiful Newport Beach." (*See* Dkt. 293 [Reporter's Transcript of Proceedings, June 19, 2019] 10:16–25.) The evidence did not suggest that Defendants intended to mislead consumers with respect to their ticket prices—even if their advertising was, in fact, misleading—since Defendants ultimately disclosed all fees prior to purchase. (*See id.* 8:10–10:9, 12:4–13:7, 14:22–25.) And the evidence on Defendants' advertising on location showed that Defendants intended to optimize their search engine results, not confuse consumers. (*See* Dkt. 295 [Reporter's Transcript of Proceedings, June 21, 2019] 75:18–76:17.)

Plaintiffs claim that, even after the 2019 trial and injunction, Defendants "still advertise the same nominal $10 or $16 teaser price in their page titles, the titles that Defendants 'hope' Google will display exactly as they have written," and therefore "never accurately communicated their price increase to customers." (Pl. Br. at 23.) Not so. On their landing pages from Google, for example, Defendants conspicuously stated that a supplemental charge applied of a specified amount at specified cruise times immediately below the ticket prices and that cruises departed from Newport Beach. (*See* Dkt. 436-1 Ex. 2001 [MP4: Video of Davey's Locker Website (Apr. 4, 2022), hereinafter "Ex. 2001"]; Ex. 2014; Dkt. 436-1 Ex. 2015 [MP4: Video of Newport Landing Website (Oct. 5, 2022), hereinafter "Ex. 2015"].) A similar disclosure appeared on Defendants' Groupon webpage. (*See id.* Ex. 2003 [MP4: Video of Davey's Locker Groupon Webpage (Apr. 4, 2022), hereinafter "Ex. 2003"].) Multiple cruise options were

available at any given moment at Defendants' advertised "from" or "starting at" prices. (*See* 11/29/22 Tr. 216:4–19.)

Plaintiffs claim that "Defendants also continue to offer false explanations for their additional charges." (Pl. Br. at 23.) Plaintiffs overplay their hand. Defendants' COVID-19 supplemental charges, as listed on their websites, purported to be a result of a "[l]arge reduction in passengers per cruise." (Ex. 2014; Ex. 2015.) Thor Brisbin explained that Defendants included these charges because Defendants were, in fact, "carrying fewer passengers" and "still are," having "reduced [their] capacity to 70 percent." (11/29/22 Tr. 265:4–7.) That the reduction may be from some cause other than government mandates does not render them unrelated to COVID-19; Defendants could have understood customers to prefer fewer passengers in proximity because of the contagiousness of the illness. Plaintiffs also believe that these charges are "arbitrary" because they "apply only to regular whale-watching cruises" and not other cruise types, (Pl. Br. at 23), but as Brisbin testified, such a comparison is like "apples and oranges"—the cruises are "different experience[s]" with different boats and numbers of passengers, (11/30/22 Tr. 9:2–5.)

Then, Plaintiffs accuse Defendants of trademark infringement for using the phrase "Feel the Harbor Breezes" in an advertisement in August 2022. (*See* Pl. Br. at 17.) It is at best unclear that this would even constitute infringement. First, it is dubious whether the phrase possesses the requisite "degree of 'distinctiveness'" to be "protectable." *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 929 (9th Cir. 2014). The phrase might be "generic," or "descriptive" without a "secondary meaning." *Id.* (citation omitted). Second, it is questionable whether Defendants' "use of the mark is likely to cause confusion." *Id.* (citation omitted). But the Court need not—and therefore does not—decide whether this use constitutes trademark infringement. This case concerns false advertising as of the date of the complaint. The Court will not allow Plaintiffs to

transform this into a new action for infringement, and it will not assign much probative value to conduct occurring well after the advertising at issue. Again, at most, the alleged conduct reflects negligence.

Plaintiffs further take issue with the series of "mistakes" that Defendants have made in their website advertising practices, which they believe amount to a culpable mental state. (*See* Pl. Br. at 25–28.) At some point, the volume and nature of mistakes may justify a finding of willfulness. But that moment has not yet arrived. The Court remarked in 2019 that "[b]y all accounts, Defendants have gone to considerable lengths to revamp their online advertising." (Contempt Order at 17–18.) At the 2022 trial, Brisbin testified that he met with his advertising team immediately after the injunction to coordinate efforts to comply, (*see* 11/30/22 Tr. 44:5–9), and among Defendants' primary goals was ensuring compliance with both this Court's and the state court's injunctions, (*see id.* at 35:11–36:2). To date, Defendants' sloppiness has been just that—sloppiness.

Plaintiffs finally intimate that disgorgement is warranted even if Defendants are found not to have acted willfully. (*See* Pl. Br. at 20–21.) To be sure, a court *can* disgorge profits absent willfulness, which is no longer an "inflexible precondition to recovery." *Romag*, 140 S. Ct. at 1497. But mental state remains "a highly important consideration in determining whether an award of profits is appropriate," *id.*, as "[a]n innocent . . . violator often stands in very different shoes than an intentional one," *id.* at 1494. Further, "an award of profits under the Lanham Act is truly an extraordinary remedy and should be tightly cabined by principles of equity." *W. Diversified Servs., Inc. v. Hyundai Motor Am., Inc.*, 427 F.3d 1269, 1274 (10th Cir. 2005); *see also* Restatement (Third) of Unfair Competition § 37 cmt. e (Am. L. Inst. Oct. 2022 Update) ("The better view limits an accounting of profits to acts intended to create confusion or to deceive prospective purchasers."); *id.* ("[A]pplication of the accounting remedy to uses undertaken in good faith can chill lawful behavior."). All this cautions towards declining

to disgorge profits absent a more culpable state—as several other courts have suggested. *See, e.g.*, *Stone Brewing Co., LLC v. MillerCoors LLC*, No. 18-cv-00331, 2022 WL 3021697, at *2 (S.D. Cal. July 29, 2022); *Fashion Exch. LLC v. Hybrid Promotions, LLC*, No. 14-Cv-1254, 2022 WL 4554480, at *5–6 (S.D.N.Y. Sept. 29, 2022).

### b) Diversion of Sales

Also lacking was evidence that "[P]laintiffs . . . ha[ve] lost [sales] as a result of [their] customers being diverted to . . . [D]efendants." *Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 121 (9th Cir. 1968); *see also Spin Master, Ltd. v. Zobmondo Ent., LLC*, 944 F. Supp. 2d 830, 840–41 (C.D. Cal. 2012). That Defendants' profits are not attributable to false advertising inherently means that no sales were diverted. In any event, the verdict in the first trial also precludes a finding of diverted sales. Though the jury found "that one or more of the defendants' statements at issue caused or is likely to cause damage to the plaintiffs," it awarded $0 in damages. (Verdict Form at 3.) The jury must have found that Plaintiffs failed to prove that they suffered any harm, or failed to prove to a reasonable degree of certainty an amount of harm, which would include diverted sales. Since this portion of the judgment was untouched on appeal, it remains binding. *See FCA US, LLC v. Spitzer Autoworld Akron, LLC*, 887 F.3d 278, 289 (6th Cir. 2018) ("[A] partial reversal of a judgment generally does not vacate or void the entire judgment."); *Laborers' Int'l Union of N. Am. v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 396 n.24 (3d Cir. 1994). The Court also would take the same view of the evidence now. And it is telling that Plaintiffs acknowledge in their brief that diverted sales is an equitable factor, (*see* Pl. Br. at 19 n.3), but do not discuss it. "[A]n award of profits with no proof of harm is an uncommon remedy in a false advertising suit," thus cautioning against disgorgement. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 831 (9th Cir. 2011).

### c) Adequacy of Other Remedies

"It is a 'basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party has an adequate remedy at law . . . .'" *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992) (first alteration in original) (citation omitted). Thus, a finding of liability coupled with an award of $0 in damages may "support[ ] a finding that there is no [ ]adequate remedy at law." *Monster Energy Co. v. Integrated Supply Network, LLC*, 533 F. Supp. 3d 928, 935 (C.D. Cal. 2021); *see also Cont'l Airlines, Inc. v. Intra Brokers, Inc.*, 24 F.3d 1099, 1105 (9th Cir. 1994) ("Th[e] difficulty of establishing economic harm . . . , lack of proof of damages, and possible immeasurability or unascertainability of harm, does not mean [the plaintiff] was not harmed. . . . '[W]here the threat of injury is imminent and the measure of that injury defies calculation, damages will not provide a remedy at law.'" (citation omitted)). Further, disgorging profits is sometimes *necessary* to deter a defendant whose misconduct "is deliberate and willful," lest both the plaintiff and the public be "slighted." *Playboy Enters., Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272, 1274 (9th Cir. 1982). Merely enjoining the misconduct of a defendant who acted willfully does not suffice, for "a profit seeking businessperson, not unwilling to violating federal law," may simply "switch from one . . . scheme to another as soon as" the first scheme is enjoined. *Id.* at 1274–75.

Of course, this is not always the case. Even if a plaintiff fails to recover damages, "the equities of the case may not require" disgorgement, and "injunctive relief" sometimes "provides a complete and adequate remedy." *Tamko Roofing Prods., Inc. v. Ideal Roofing Co., Ltd.*, 282 F.3d 23, 35 (1st Cir. 2002); *see also Synergistic Intern., LLC v. Korman*, 470 F.3d 162, 176 (4th Cir. 2006); *Minn. Pet Breeders, Inc. v. Schell & Kampeter, Inc.*, 41 F.3d 1242, 1247 (8th Cir.1994). Thus, an injunction often is enough when a defendant's misconduct was not willful, as the need for disgorgement "to serve as

a convincing deterrent" to the wily, "profit maximizing entrepreneur" inclined to transgress the law is not great. *Playboy*, 692 F.2d at 1274; *see also Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 459 (5th Cir. 2017) (noting that monetary remedies under the Lanham Act "are not warranted" when "an injunction alone fully satisfies the equities of a given case," which "is particularly true in the absence of a showing of wrongful intent" (cleaned up)); *Tamko*, 282 F.3d at 35 (noting that "injunctive relief may be adequate if there has been no fraud or palming off").

The equities of this case do not require disgorgement, as they were satisfied upon issuing the injunction. Since Defendants did not act willfully, disgorgement is not required to "take all the economic incentive out of" false advertising for a business unwilling to abide by the strictures of the law. *Playboy*, 692 F.2d at 1275. Disgorgement also is not necessary to remove any ill-gotten gains or to compensate for Plaintiffs' harm. As discussed above, no profits are attributable to Defendants' misconduct, and Plaintiffs suffered $0 in damages. Finally, Plaintiffs are incorrect that the injunction in this action and the state-court action are insufficient because Defendants have "failed to stop ongoing culpable behavior." (Pl. Br. at 30.) Plaintiffs have sought to hold Defendants in contempt twice, yet this Court and the state court rebuffed those attempts because the challenged conduct amounted at best to inadvertent, short-lived violations or simply did not constitute violations at all. That Plaintiffs have brought unsuccessful motions to hold Defendants in contempt is no reason to think that the injunctions are insufficient. It shows that Plaintiffs picked the wrong battles to fight—or that the injunctions are, in fact, working to deter misconduct. Thus, the equities of this case do not justify awarding disgorged profits on top of the injunction.

//
//
//
//

### d) Unreasonable Delay by Plaintiffs

"Determining whether a delay was unreasonable requires answering two questions: how long was the delay, and what was the reason for it?" *Eat Right Foods Ltd. v. Whole Foods Mkt., Inc.*, 880 F.3d 1109, 1116 (9th Cir. 2018). The clock to measure "the length of delay" starts at "the time the plaintiff knew or should have known about its potential cause of action" and ends at the time the plaintiff brought the suit. *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 838 (9th Cir. 2002). "Reasonable justifications for a delay include," for example, "exhausting remedies through administrative processes, evaluating and preparing complicated claims, and determining 'whether the scope of proposed infringement will justify the cost of litigation.'" *Eat Right Foods*, 880 F.3d at 1117 (quoting *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 954 (9th Cir. 2001)). "In contrast, delay is impermissible when its purpose or effect is to capitalize on the value of the [defendant's] labor by determining whether the [mis]conduct will be profitable." *Evergreen Safety Council v. RSA Network Inc.*, 697 F.3d 1221, 1227 (9th Cir. 2012).

Any accusation against Plaintiffs of a "lack of diligence" rings hollow. *In re Beaty*, 306 F.3d 914, 927 (9th Cir. 2002). Plaintiffs first sued Defendants in state court in 2011, resulting in a permanent injunction against certain advertising practices. (*See* Order MJP at 4–5.) Plaintiffs moved unsuccessfully to hold Defendants in contempt in 2014. (*See id.* at 5–6.) Plaintiffs brought this action in 2017 for "new and continuing misconduct from after the contempt proceedings and for wrongdoings from January 1, 2015." (*Id.* at 6 [emphasis omitted] [quoting Compl. ¶ 33].) Plaintiffs then moved for contempt in this Court. (*See* Contempt Order at 2.) And Plaintiffs' principal, Dan Salas, checks Defendants' websites daily. (*See* 11/29/22 Tr. 105:25–106:11). This pattern hardly smacks of dillydallying.

Nonetheless, Defendants baldly assert that Plaintiffs "failed to raise any issue regarding Defendants' fee disclosure practices in" state court and "waited several years" to bring this action "in an apparent attempt to increase their" monetary recovery. (Dkt. 439 [Defendants' Post-Trial Brief in Support of Opposition to Plaintiffs' Request for Disgorgement of Profits and Attorenys' (sic) Fees] at 30.)  Yet Defendants cite nothing in the record in support, and their contention flies in the face of the facts.  If anything, Plaintiffs have hounded Defendants about their advertising practices for over a decade.  Indeed, Brisbin bemoaned "living in [litigation] for the last 14 years." (11/29/22 Tr. 256:3–4.)  The absence of unreasonable delay by Plaintiffs thus, admittedly, favors disgorgement.

### e)   Public Interest in Making Misconduct Unprofitable

"The public has an interest in avoiding confusion" from false advertising. *Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 993 n.5 (9th Cir. 2009); *see also Playboy*, 692 F.2d at 1275 (noting that "an inadequate judicial response" harms the "consuming public" because "[m]any consumers are willing to pay substantial premiums for particular items which bear famous trademarks based on their belief that such items are of the same high quality as is traditionally associated with the trademark owner").

"[W]hile the public has a general interest in making [false advertising] unprofitable, no factors strengthen or distinguish that general interest in this case." *Idaho Golf Partners, Inc. v. TimberStone Mgmt., LLC*, No. 14-cv-00233, 2017 WL 3531481, at *14 (D. Idaho Aug. 17, 2017).  This case does not involve willful misconduct, when the need to deter misconduct is at its apex.  *See Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 485 (D.N.J. 2009) (finding disgorgement warranted given the equities of the case, "especially" since the defendant's "violative conduct is not

willful"). An injunction satisfies the equities of this case. Any generalized public interest in minimizing false advertising, moreover, is mitigated by the competing interest of the public in robust competition from a competitor that, candidly, offers lower prices than Plaintiffs. *See Buzz Off Insect Shield, LLC v. S.C. Johnson & Son, Inc.*, 606 F. Supp. 2d 571, 590 (M.D.N.C. 2009) (noting the possibility of "an undesired anti-competitive effect" in concluding that the public interest factor does not favor enhanced damages under the Lanham Act). And as noted, Defendants ultimately disclosed to consumers the final prices for tickets before any purchases could be completed. The public interest factor, therefore, only marginally favors Plaintiffs—if at all.

### f) Palming Off

Defendants' conduct that forms the basis of this action does not constitute "'palming off' or 'passing off,' which involves selling a good or service of one person's creation under the name or mark of another." *Lamothe v. Atl. Recording Corp.*, 847 F.2d 1403, 1406 (9th Cir. 1988). Defendants' advertising with respect to a Long Beach departure location or fuel or wharfage fees in no way amounts to Defendants representing that their services are under Plaintiffs' name or mark. This factor accordingly does not favor disgorgement.

\* \* \*

The lack of profits attributable to Defendants' false advertising itself justifies denying disgorgement. The equities of the case dictate the same conclusion. The Court assigns great weight to the mental state and diverted sales factors, which alone would convince the Court to exercise its equitable discretion not to disgorge profits. This point is only accentuated when considering these two factors in conjunction with the other

factors weighing against disgorgement.  One way or another, however, this much is certain: disgorgement is not warranted.

### B. Attorneys' Fees

Section 35(a) of the Lanham Act also provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  15 U.S.C. § 1117(a).  Courts must "examine the 'totality of the circumstances' to determine if the case was exceptional, exercising equitable discretion in light of the nonexclusive factors" that the Supreme Court identified in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014), and *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994), "and using a preponderance of the evidence standard."  *SunEarth*, 839 F.3d at 1181 (citation omitted).  Those factors include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  *Octane Fitness*, 572 U.S. at 554 n.6.  "[B]ecause the Lanham Act '*permits*, but does not mandate, an award of attorneys' fees' in 'exceptional' circumstances, '[a] party alleging that the district court erred by failing to award attorneys' fees . . . faces an uphill battle.'"  *Nutrition Distrib. LLC v. IronMag Labs, LLC*, 978 F.3d 1068, 1081 (9th Cir. 2020) (second alteration in original) (citation omitted).

Awarding fees here is inappropriate.  It is doubtful whether Plaintiffs are "prevailing part[ies]" entitled to fees under the Lanham Act.  15 U.S.C. § 1117(a); *see Kaloud, Inc. v. Shisha Land Wholesale, Inc.*, 741 F. App'x 393, 396–97 (9th Cir. 2018) (upholding denial of attorneys' fees because the plaintiff "was not the 'prevailing party,'" since the plaintiff "did not receive any damages in this case, and a permanent injunction does not qualify as 'actual damages'").  Even if they were, this case is not exceptional.  Plaintiffs' case does not stand out from others with respect to its substantive strength.

They proved liability and obtained an injunction yet failed to recover damages or profits. Although the injunction confers some public benefit, stopping misleading advertising about whale watching does not ameliorate a serious public harm. *Cf. TrafficSchool.com*, 653 F.3d at 832 (remanding for district court to consider, in determining attorneys' fees, the substantial benefits gained through an injunction where plaintiffs stopped consumers from mistakenly transferring sensitive personal information to a commercial website called DMV.org). That Plaintiffs have spent eight years litigating related issues, in both state and federal court, does not make this case exceptional. If anything, it undermines Plaintiffs' claim of exceptionality, as the litigation has achieved mixed results. Nor have Plaintiffs shown that Defendants conducted this litigation in an "unreasonable manner." *S.D. Comic Convention v. Dan Farr Prods.*, 807 F. App'x 674, 676 (9th Cir. 2020) (citation omitted). To be sure, the conduct of all parties in this action has been at times vexing to everyone involved. But there has been no significant "failure to comply with court rules, persistent desire to re-litigate issues already decided, advocacy that veered into 'gamesmanship,' [or] unreasonable responses to the litigation" by Defendants. *Id.*

**IV.    CONCLUSION**

For the foregoing reasons, the Court declines to disgorge Defendants' profits or to award attorneys' fees. Pursuant to this Memorandum of Decision, the Judgment and Permanent Injunction, (Dkt. 314), remain the same and will not be amended.

DATED:    March 13, 2023

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE